**SUN OIL COMPANY and the Superior Oil Company**

v.

**The UNITED STATES, Marathon Oil Company, Intervenor.**

**No. 806–71.**

United States Court of Claims.

April 16, 1975.

Edgar H. Brenner, Washington, D. C., attorney of record, for plaintiff The Superior Oil Co. Abe Krash, James A. Dobkin, David Bonderman, Arnold & Porter, Washington, D. C., of counsel.

Theodore L. Garrett, Washington, D. C., for plaintiff Sun Oil Co. Henry P. Sailer, Washington, D. C., attorney of record. Covington & Burling, Washington, D. C., of counsel.

Richard A. Baenen, Washington, D. C., attorney of record for Intervenor Marathon Oil Co. Patricia Brown, Wilkinson, Cragun & Barker, Washington, D. C., of counsel.

Myles E. Flint, with whom was Asst. Atty. Gen. Wallace H. Johnson, for defendant. Andrew F. Walch, Atty., Dept. of Justice, Washington, D. C., of counsel.

Herbert J. Miller, Jr., Washington, D. C., for Richard M. Nixon. Thomas D. Rowe, Jr., William H. Jeffress, Jr., R. Stan Mortenson, Miller, Cassidy, Larroca & Lewin, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS and BENNETT, Judges.

## PER CURIAM:

The question here at issue is whether or not a former President of the United States, a private citizen, can maintain absolute privilege as to certain White House papers sought on motion for discovery by plaintiffs in a civil suit. The question does not appear to have been finally decided heretofore by a federal court.

Plaintiffs are oil companies that have leased from the United States an area off the coast of California, in the Santa Barbara channel, for exploration and drilling for oil and gas, pursuant to the Outer Continental Shelf Lands Act, 67 Stat. 462 (1953). Plaintiffs allege that their lease, OCS P–0240, expressly grants to them the right to erect in the leased area all platforms, pipelines and other works and structures necessary to the full enjoyment of the rights granted by the lease for which they have paid defendant $38,380,032 and have, in addition, expended over $70 million in exercise of their rights thereunder. Their principal claim is that defendant has both breached the contract and has taken their property rights under the lease by its delay in permitting, and refusal to permit, installation of Platform Henry, an oil drilling platform essential to operation of the lease. Plaintiffs seek to ascertain through the discovery process who made the decision to deny their application to proceed with Platform Henry, and why it was denied. Four documents are now contested by the claim of privilege. Some 30 other documents from the Executive Department have been provided to plaintiffs either voluntarily or by court order after *in camera* inspection by the trial judge.

On November 26, 1974, the former President's present counsel moved to file with the court a document, captioned Formal Claim of Presidential Privilege, personally signed by Richard M. Nixon.[1] We allowed the motion. The claim states in full:

I, Richard M. Nixon, have reviewed the items identified in Part D of the appendix to the affidavit of J. Fred Buzhardt dated February 26, 1974, and submitted to this Court. I hereby represent to the Court that these materials relate to the period of my term as President of the United States, constitute communications to the President from his advisors or communications among his White House advisors concerning contemplated Presidential action, and are within the constitutional privilege of the President to refuse to disclose confidential information. Thus, I must respectfully claim privilege with regard to these materials.

---

1. A claim of executive privilege was filed by counsel to the President, J. Fred Buzhardt, after consultation with Mr. Nixon while he was still President. The claim was rejected by the trial judge as not sustainable under the doctrine of United States v. Reynolds, 345 U.S. 1, 7–8, 73 S.Ct. 528, 97 L.Ed. 727 (1953), and other authorities, because not claimed personally by the head of the Executive Department. Mr. Nixon had left office when this ruling was reviewed by this court on appeal. The court, on November 7, 1974, entered an order requiring him to assert the privilege personally if he wished to pursue it, defendant having elected to withdraw any claim of privilege in its own right.

Part D of the Buzhardt affidavit referred to identifies the four documents, as follows:

D. Presidential documents which include briefing papers and memoranda prepared for the President for his use in meetings and in decision making regarding whether to allow drilling.

(1) 3/27/69 Letter, Russell E. Train to the President, containing recommendation for action to be taken in connection with the oil spill.

(2) 4/ 9/70 Memorandum, Russell E. Train, Robert Cahn and Gordon J. Mac-Donald, (CEQ) to the President, stating the CEQ's views on the position of the Secretary of the Interior.

(3) 4/13/70 Memorandum, John C. Whitaker to William T. Pecora discusses proposed Presidential statement.

(4) 4/15/70 Memorandum, W. T. Pecora to John Whitaker: Paragraph on drilling on the Dos Cuadras Structure. (Draft paragraph for inclusion in Presidential statement.)

Mr. Nixon suggests that a distinction may be drawn between traditional "executive privilege," which could not be asserted by a private person because it relates to military, State, and national security matters, on the one hand, and on the other, absolute "presidential privilege" which may be asserted by a former President as to other documents generated during his Administration. The Government, it is said, represented by an incumbent President, has a primary interest in the former. Also, it is argued, there is a big difference between civil and criminal cases as to privilege because it can be invoked in the latter only at the price of letting defendant go free, and because a criminal defendant will frequently have constitutional claims for the production of privileged material which would be infrequent in civil cases. It is argued that any breakdown in privilege would encourage interminable civil litigation because the actions of a President in today's society have such a direct bearing on happenings in the market place. Any balancing of competing claims on a motion for discovery under such circumstances would violate the privilege and render it meaningless under this view. The public interest in protecting confidentiality of advice given to a President and the potential chill on free expression of opinions by aides, as well as the right of personal privacy, outweigh any possible interest a plaintiff might have in discovery of presidential papers in a civil case, according to the former President. It is pointed out that if only an incumbent President can claim privilege, a former President could be put at great disadvantage because his successor might be politically hostile or have other conflicting interests and, knowing of this possibility, a President's aides, fearing potential disclosure of their recommendations soon after he leaves office, would not in some cases give a President the candid advice he needs for proper, objective discharge of his decision-making powers and responsibilities under the Constitution. Finally, Mr. Nixon says that plaintiffs have, in any event, made no showing of necessity sufficient to support this discovery, even assuming it is possible to overcome the privilege claimed. The foregoing are Mr. Nixon's principal arguments, and in support of his position he relies principally upon United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); Senate Select Committee v. Nixon, 498 F.2d 725, 729–30 (D.C. Cir. 1974); Nixon v. Sirica, 159 U.S.App.D.C. 58, 487 F.2d 700 (1973); Committee for Nuclear Responsibility, Inc. v. Seaborg, 149 U.S. App.D.C. 385, 463 F.2d 788, 794 (1971); Kaiser Alum. & Chem. Corp. v. United States, 157 F.Supp. 939, 944, 141 Ct.Cl. 38, 45 (1958); and United States v. Burr, 25 F.Cas. pp. 187, 192 (No. 14,694) (C.C. D.Va.1807).

Defendant United States has withdrawn its initial claim of privilege respecting the contested documents but supports Mr. Nixon's claim of privilege because "it has a strong institutional interest in the protection to be afforded Presidential materials once the President leaves office." Defendant states that there is a presumptive privilege for the confidentiality of presidential communications, that it is fundamental to the operation of Government and inextrica-

bly rooted in logic and the separation of powers under the Constitution, and cannot simply disappear overnight because a President leaves office. Defendant believes this position to be in accord with United States v. Nixon, *supra.*

Defendant also refers to the so-called Truman precedent. The Un-American Activities Committee of the United States House of Representatives subpoenaed former President Harry S. Truman to testify before it in 1953. Mr. Truman declined to testify, stating that he was following "a long line of precedents" of presidential refusals to respond to congressional demands for information, and that the doctrine of separation of powers has validity as to a former President. The Committee did not press the issue and it never reached a court.

Defendant, however, takes the position that while the presumptive privilege of confidentiality extends to a former President, it is not inviolate, and that it is proper for the court to undertake a balancing process to determine the competing rights. Defendant admits that if plaintiffs are able to show that the documents are relevant to this litigation and that plaintiffs have demonstrated a proper need for them to establish facts, the court must consider whether such a showing overcomes the need for confidentiality embraced within the presumptive privilege afforded the documents. No sensitive national security matters are involved. Thus, on the extent of the privilege, defendant disagrees with Mr. Nixon who holds that it is absolute and beyond the court's inquiry.

All contestants here are agreed that since the papers sought are in possession of defendant, the United States, as to the issue of whether they should be produced by discovery, the question of their ownership is irrelevant.

Finally, we turn to a statement of plaintiffs' contentions, which will also be summarized. At the outset, plaintiffs reject the notion that there can be any viable distinction between executive privilege and presidential privilege. They are said to be of the same cloth,

for the public benefit, and assertible only by an incumbent President. United States v. Reynolds, *supra,* 345 U.S. at 7–8, 73 S.Ct. 528; Nixon v. Sirica, *supra,* 487 F.2d at 717; Kaiser Alum. & Chem. Corp. v. United States, *supra,* 157 F.Supp. at 944, 141 Ct.Cl. at 45; Senate Select Committee v. Nixon, *supra,* 498 F.2d at 729. Further, there is no absolute privilege; the courts do have authority to review assertions of presumptive executive privilege, and it is their responsibility, and not that of a President, to say what the law is. United States v. Nixon, *supra*; Nixon v. Sirica, *supra*; Committee for Nuclear Responsibility, Inc. v. Seaborg, *supra.* As to the idea that frank communication between presidential aides and the President will be destroyed and thus a recognized constitutional protection of confidentiality will be debased if discovery is allowed, plaintiffs say that any incumbent President has an interest in protecting such communications from unwarranted disclosure, because he too will leave office eventually; that public officials are presumed to act properly, and that even under Mr. Nixon's absolutist views of privilege, presidential aides could never be sure that their President would not release their comments at some point in time anyway. It is also pointed out that if claims of executive privilege are not absolute under the Freedom of Information Act, 5 U.S.C. § 552 et seq., Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971), where a requesting party need not show particular need for the information, a *fortiori,* then the same result must follow in civil litigation where such need is demonstrated. Center on Corporate Responsibility, Inc. v. Shultz, 368 F.Supp. 863 (D.D.C.1973); Black v. Sheraton Corp., 371 F.Supp. 97 (D.D.C.1974). Plaintiffs maintain that the proper procedure in such a case is for the court to balance the private litigant's need for the documents against the Government's or the public's interest in the privilege asserted. United States v. Reynolds, *supra,* 345 U.S. at 8, 73 S.Ct.

528. As to the latter, plaintiffs point out that the claim of privilege here shows no compelling reasons against disclosure other than alleged rightness of the view of absolute protection of confidentiality against diclosure asserted to reside in a former President's papers in a civil case. Since the Supreme Court, in United States v. Nixon, *supra*, held that a generalized claim of public interest in confidentiality in nonmilitary or State secrets is insufficient, and rejected the idea that there can be any absolute privilege in a President in a criminal case, it follows logically, in plaintiffs' view, that the same result should follow in a civil case. The Supreme Court, of course, explicitly refrained from stating this latter view, as it was unnecessary to do so to reach a decision in that particular case.

■ It has been necessary to set forth the contentions of the parties at length to show that they have raised a serious issue with constitutional dimensions of some magnitude. We have carefully examined all the cases which establish that a claim of executive privilege will give way to a showing of sufficient need by a litigant in a civil case. Those cases, of course, involved various claims of privilege by the heads of executive agencies rather than by the Chief Executive. In United States v. Nixon, *supra*, it was held that the claim of executive privilege has constitutional significance where the incumbent President is involved. Yet, the constitutional overtones did not preclude the Supreme Court from finding that the incumbent President's right of executive privilege is not absolute in a criminal case. We think that the same sort of balancing process would be applicable to an incumbent President's claim of privilege in a civil case, albeit the burden on the litigant seeking discovery might be heavier. *A fortiori*, then, we believe that the claim of privilege asserted by a former President, whether that claim be called executive or presidential privilege, cannot be absolute. We so hold. He should be entitled to no greater rights than the incumbent President in this regard.

■ If there is no absolute privilege in a former President to resist discovery, and no court has ever recognized such a privilege, although counsel have advanced several cogent reasons to recognize it in some manner, does he have presumptive privilege in a civil case such as an incumbent President would enjoy? We do not believe that it is necessary in this case to decide whether there is presumptive privilege that follows a President from the White House into private life. Giving the benefit of every doubt to the former President by assuming, without deciding, that there is a presumptive privilege he can invoke, the rule has long been established that where a demonstrated need for documents sought is clearly sufficient, on balance, to override a claim of privilege, the documents must be produced. United States v. Reynolds, *supra*, 345 U.S. at 11, 73 S.Ct. 528; Nixon v. Sirica, *supra*, 487 F.2d at 713. This follows logically from the fact that since executive privilege is merely presumptive, the presumption may be overcome on a proper showing.

■ A court concludes whether or not there is enforceable privilege in a given case by examining the motion papers, or affidavits of the parties concerning a claim of privilege, or, in some cases, by *in camera* inspection of the disputed documents. Confidentiality is not diminished by *in camera* inspection. United States v. Nixon, *supra*. Since a President is not absolutely immune from court process, a former President can claim no greater immunity, and the court must determine whether his claim of privilege, assuming his right to assert it, is overcome by a plaintiff's need in litigation. Have plaintiffs shown the requisite need here? We think so.

Plaintiffs claim a breach of contract and a taking. They say that as a matter of law only the Secretary of the Interior could, for environmental reasons only, have refused permission to build Platform Henry for development of their lease. On September 21, 1971, over a year after they had filed their application to install the platform, that applica-

tion was denied, purportedly by the Secretary, for unspecified environmental reasons. On November 23, 1972, more than a year after the denial, and after commencement of this litigation. the Secretary rendered a formal "decision" based on environmental grounds. Another year passed, and on September 25, 1973, at a news conference, President Nixon is shown to have stated that the Secretary, the official specified in the contract and in the statute, *supra*, to take such action, did not in fact make the decision to deny plaintiffs' application, but that the President made it and the Secretary merely announced it.

Prior to the September 21, 1971 denial of plaintiffs' application, there was a flurry of activity by presidential subordinates exchanging memoranda concerning the proper action to be taken and the various factors to be considered in reaching a decision on the application, including the potential political impact. The four additional documents now sought, as described above in the Buzhardt affidavit, consist of two memos between presidential aides and two from his aides to the President, allegedly refining still further the options believed open for ultimate presidential consideration and decision. We have, of course, not seen the documents. We do not know whether, as plaintiffs hope, they will show who refused the application for Platform Henry, or why it was refused. But, it is reasonably clear that they have a need to show the foregoing. These papers might well lead to the discovery of admissible evidence and are suggestively relevant to the subject matter of this action. Plaintiffs seem to believe that they will ultimately be able to prove that the President or someone on his White House staff turned their application down and did so for impermissible, extraneous, political, or other reasons which they think, if shown, would make their case. They are entitled to try to show this, and a generalized claim of privilege, assuming a former President can assert it, cannot prevail against the plaintiffs' need to develop the facts by resort to discovery.

 We see no need to go further. The issue is narrower than the parties would have us believe. It is not necessary now to resolve finally the constitutional issue of how much privilege, if any, a former President has. There has been enough delay. We order the case remanded to the trial division for *in camera* inspection of the four contested documents by the trial judge who has this matter on his docket. We charge him to assume the responsibility (heavier because presidential papers are involved) of examining the documents for the purpose of excising any parts thereof that do not meet the test set forth in United States v. Nixon, *supra*, other applicable precedents and authorities, and the Rules of the United States Court of Claims. In his discretion he may seek the aid of counsel in the case for *in camera* consideration of the validity of particular excisions. If he does so, he should consult all counsel. In short, we assume, without deciding, that the former President has presumptive privilege, no greater than the incumbent, but find upon this assumption that plaintiffs have made a sufficient showing of need to overcome the presumption and to justify the *in camera* inspection of the four contested documents. Such a showing as has been made here would not be possible in every case and thus would not always justify the assumption we can and do make here. In such a case it might be necessary to decide the broader issue of whether a former President has the right to claim an executive or "presidential" privilege, but it is inappropriate to decide an issue of such magnitude when the dispute can be resolved on narrower grounds available to us here.[2]

The trial judge entered an order on May 16, 1974, ruling that the claim of executive privilege made by the Presi-

---

2. Because of the narrow grounds upon which we dispose of the present matter, we have denied, by separate order, the motions of Mr. Nixon's counsel for leave to file supplemental materials on other questions contained in briefs to other courts.

dent's counsel was insufficient and that it must be made by the President personally or else the contested documents would have to be produced for inspection by plaintiffs. Defendant requested review but has since rendered the request moot by withdrawing its claim of executive privilege. Defendant admits that it would not be against the public interest to disclose the documents if plaintiffs can show to the court's satisfaction that they are needed to establish facts relevant to the litigation. In such event, defendant agrees, it is proper for the court to consider whether such a showing overcomes the need for confidentiality embraced within the rule of presumptive privilege afforded presidential papers as an encouragement to candor.

For the reasons, and to the extent, set forth in the order above directing *in camera* inspection, the motion filed November 7, 1974, for a protective order against discovery of the four contested documents of former President Richard M. Nixon is denied.

NICHOLS, Judge (concurring):

I concur in the result. The court proposes a course of action that is rational in the circumstances, and fair to both sides. I cannot join in all the reasoning but come to the same end by another route.

The theory is as I understand it as follows: First, we reject Mr. Nixon's claim of absolute privilege. Whether his claim can be treated as one for a qualified privilege, or rejected entirely, is considered as moot because the same action should be taken in either case. If the claim is valid for qualified privilege, we checkmate it with a holding of "necessity". In either case, our duty is the same. Even where no privilege is involved, we must safeguard important and sensitive Government papers against irresponsible fishing expeditions. The examination of the disputed documents in chambers in presence of counsel on all three sides, and excision of irrelevant and prejudicial material, would be a fair and reasonable measure, qualified privilege or none.

I have difficulty with the court's determination of "necessity", which I find to be premature. In the first place, it may be that the disputed documents will be found merely cumulative in their probative effect with documents already discovered. In that event, there is not "necessity". Weiss v. United States, 180 Ct.Cl. 863 (1967), 408 F.2d 416, 187 Ct.Cl. 1 (1969). We said at 180 Ct.Cl. 870:

* * * The privilege here is not absolute and must yield to compelling necessity. The court, through one of its judges, offered the Government the opportunity to save the privilege by opening up other means for the court to ascertain the facts it had to have. The Government endeavored to comply with this suggestion but we hold it has not succeeded in doing so. * * *

The defendant has opened up "other means" here but plaintiff apparently believes it can prove still more if it has full discovery. It will therefore be requisite to compare the documents now in controversy with those already discovered to see what the former add. The trial judge should do this after remand to him.

Our determination of "necessity" besides being premature in the above particular, seems to me to give unintended countenance to a technique of attacking administrative decisions by impugning the motives of those who make them, that I think, we are seeing too much of in courts of law. I recognize a possibility that the four disputed documents may reveal a breach of plaintiff's legal rights, according to any lawyer's ideas, a possibility made real by the facts recited. The court has taken care not to pronounce too much, but any determination of "necessity" implies some judgment as to substantive law. I would prefer that announcement of the legal consequences of the documents should follow and not precede a revelation of their contents. This is the ordinary order and legal pronouncements made without regard to it are apt to come back and haunt us. I would have the trial judge determine "necessity", subject of course to review

by us, after he has seen the controverted documents and knows what they will show. In *Weiss,* we determined "necessity" in course of reviewing a trial judge's decision on the same issue, without either of us seeing the documents, but neither he nor we had the light we have received since as to the rights and duties of a court in face of a qualified privilege. There may be situations still where the court must determine "necessity" without seeing the documents, but I do not think this case is one of them.

As I read United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the Supreme Court did not determine "necessity" *vel non* in general or as to any particular document. The instructions to the trial judge in fn. 21, p. 715 of 418 U.S., p. 3111 of 94 S.Ct. mention that he is to determine relevance and admissibility and make excisions where appropriate. It may be in the context of a criminal proceeding the non-necessity of merely cumulative material is not a factor. The other elements of "necessity" are incorporated in relevance and admissibility.

If I am wrong in the above, however, I will add I don't think we have before us, anyway, a claim of privilege by one legally qualified to make it. I agree that no ex-President can assert an absolute privilege but deny that he can assert a qualified privilege. Of course it is true that an incumbent President might wrongly refuse to claim privilege for his predecessor's papers when it should be claimed, assuming as I do that the privilege serves a useful purpose even where, as here, military or diplomatic secrets are not involved. Conversely, an ex-President may claim privilege in a distorted or one-sided manner, or not claim it when it should be claimed, if the claim is his to make. He may be more concerned with another try at the Presidency, or with his place in history, than he is with the public interest. The right to claim privilege is not really a privilege in the ordinary sense. It is a duty. The duty must devolve, if it is to be exercised in the public interest, on the person who is currently under oath to see that the laws are faithfully executed, *i. e.,* the current incumbent. I would hold we have no valid claim of privilege before us.