On June 27, 1975 the court issued the following order:
Before SeedtoN, Judge, Presiding, Kunzig and BeNNEtt, Judges.
*986 “This case is before the court on defendant’s motion for review, pursuant to Hule 53(c) (2) (ii), of an order of Trial Judge Harkins, filed December 4, 1974, allowing plaintiffs’ motion under Rule 74 for production and inspection of seven Internal Revenue Service (IRS) documents, and tlie trial judge’s order filed March 14, 1975, denying defendant’s motion for reconsideration of the order of December 4,1974. Defendant also challenges the trial judge’s refusal to certify this matter, pursuant to Rule 53, to the court for review as a matter of controlling importance or deprivation of rights which must have a final ruling prior to decision on the merits. We believe that defendant has made a sufficient showing to permit review.
“Defendant says that, if the trial judge would not deny discovery of the documents to plaintiff, he should have at least agreed to an in camera examination thereof for the purpose of excising privileged and irrelevant portions pertaining to advisory opinions as contrasted to factual mattei-s. Defendant says that the advisory opinions of IRS officials are here exempt from disclosure on the grounds of relevancy, failure to show good cause, and so-called ‘governmental privilege,’ as contrasted to executive privilege.
“This case involves the question of whether the plaintiffs are liable for the failure of Associated Engineers, Inc. (Associated Engineers), a defunct wholly owned subsidiary, to withhold and pay over to IRS federal employment taxes for the second and third calendar quarters of 1963. Plaintiff Makar is president of Cetron Electronic Corporation. Third-party plaintiffs include a former president of Cetron during the quarterly periods in issue, who was also a director of Associated Engineers at the time, together with the Cetron treasurer who was also a director of both corporations. IRS made a 100-percent penalty tax assessment against all plaintiffs. Token payments were made and refund claims were made and denied. The plaintiffs seek a refund of the taxes paid, and defendant’s counterclaim seeks recovery of the unpaid assessments. The seven contested documents (group II documents) are what remain of many documents otherwise discovered, voluntarily or by order. The contested documents were prepared during the period from April 15,1966 through Eebru- *987 ary 7,1969. They consist of internal reports of officials of IES relating to assessment of the 100-percent penalty tax under section 6672 of the Internal Revenue Code of 1951, against those persons deemed responsible for the failure of Associated Engineers to collect and pay over to IKS the taxes at issue.
RELEVANCE
“As the trial judge properly pointed out, the Kules of the Court of Claims provide for discovery upon motion showing ‘good cause’ (Kule 71(a)) when the materials sought are ‘not privileged’ (Rules 71(b) (1) and 74(b) (1)) and when they are ‘relevant’ (id.) to the subject matter involved in the pending action. It is not ground for objection that the information sought may be inadmissible at the trial if it appears reasonably calculated to lead to the discovery of admissible evidence (Kules 71(b) (1) and 74(c)).
“The documents described above plainly relate to the assessment of the taxes involved and to the issues in this case. Plaintiffs assert a need for these materials in order to identify the scope of a stipulation defendant agreed to in bankruptcy proceedings of Associated Engineers. They may lead to admissible evidence. Plaintiffs say that the only source of information presently available are the records of defendant since the bankruptcy records have not been located. Plaintiffs also want to know about defendant’s other efforts to collect the taxes due and assessed here and about its efforts to recover from agencies of the United States amounts they owed the bankrupt under contracts with it.
“Defendant objects that the records contain opinions, reasoning, and conclusions of officials of IKS evaluating the penalty assessment made and the responsibility for payment and, while they do relate to the assessment of the taxes involved, they are not probative evidence on the issues in the refund case, and therefore not fully relevant. Defendant believes all the basic, relevant, transactional facts are known to plaintiffs already and relies on cases we believe not to be helpful to its position. One of these is Gay Gibson, Inc. v. United States, 198 Ct. Cl. 993 (1972). In that case plaintiff also sought certain intra-agency documents, and the court’s *988 order on request for review remanded the problem to the trial judge for an in camera inspection of the questioned documents to excise advisory opinions, conclusions and reasoning of Government officials in the administrative and decision-making process and required, further, that if these tilings were so intertwined with factual matters that they could not be separated, production then should be denied. Gay Gibson was the taxpayer, unlike here, where our plaintiffs presumably have less or no knowledge of what occurred within the IRS. In the cited case, the basis for the deficiency assessment was alleged unreasonable compensation to the executive officers. The court issued its order without oral argument. We do not know, whether it may have concluded that the material there sought was simply not subject to discovery because irrelevant. There was no discussion of the facts. In any event, the parties in the present case have well briefed the matter, and the trial judge has filed two well-prepared opinions on the issues — none of which were available to us in Gay Gibson. We are satisfied that relevance has been demonstrated here. We do not, at this stage of the proceedings, have to consider how probative the evidence may be or whether it is admissible at trial. Under the circumstances, the Gay Gibson order, which is terse and without citations, is of limited precedential value in the present case. The other cases cited by defendant are inapposite.
good cause
“Determination of good cause turns on the facts of each case and must be decided within the discretion of the trial judge. 4A Moore’s Federal Practice ¶ 34.08 (2d ed. 1914); 2A BAKRON AND PIOLTZOEE, FEDERAL PRACTICE & PROCEDURE § 796 (Rules ed. 1961). Here he has concluded that the facts show production is necessary, that there is a demonstrated, genuine need for the documents, that they are in defendant’s exclusive custody, that the trial cannot' continue until the matter now contested is resolved, and that plaintiffs’ demand is not an idle fishing expedition. If relevant, genuinely needed, and not otherwise available, there is good cause for production of documents for trial preparation. In the spirit *989 of our Eule 1, we give a liberal construction to tlie application of the rules to afford an expeditious and just determination of actions. Cf. Rules 71 and 74 and Fed. R. Civ. P. 26 and 34 and advisor’s notes. American Cyanamid Co. v. Hercules Powder Co., 211 F. Supp. 85, 90 (D. Del. 1962).
‘GOVERNMENTAL PRIVILEGE’
“Defendant’s principal contention is that the seven group II documents are privileged from production under Eule 74 because of an alleged general privilege the Government has against disclosure of any intra-agency communications that contain opinions, conclusions, and reasoning of Government officials used in the administrative decision-making process. Defendant seeks to distinguish and does not assert the doctrine of executive privilege which can be personally invoked only by the head of a department or agency. Both doctrines are said to have a similar basis, however, in public policy which favors candid discussion between subordinates and superiors in Government. It is argued that such discussion would be handicapped by the possibility of disclosure and, thus, the decisionmaking process would be impeded. There is, however, also a general public policy for production of evidence needed in the search for truth. In the adversary system of establishing truth by litigation, this is very important, for such a system requires development of all relevant facts to produce real justice through due process. These competing considerations were fully developed by the orders of the trial judge on December 4, 1974, and March 14, 1975. He concluded that—
Unless there is a valid executive privilege, properly asserted, no public policy countenances withholding relevant information needed in the judicial process for evidentiary purposes merely because one of the contesting parties is the Government. The Government, as a litigant, has no greater right to secrecy in a tax refund' case than a private litigant. Intra-agency communications, if relevant and not privileged, are subject to discovery'. [Footnote omitted.]
There is no attorney-client privilege claimed here or any claim of privilege for an attorney work product. The trial *990 judge on in camera inspection denied discovery as to such matters. There is no military or diplomatic secret sought to be protected. There is no effort to get a private ruling or memoranda in some unrelated taxpayer’s file. There is only a claim for production of documents routinely prepared in the day-to-day activities of the IES relevant to the assessment against plaintiffs. There is no showing that their production would upset vital Government functions — for there is no claim of executive privilege. We are not persuaded that disclosure here will have any significant or adverse effect on the caliber of IES decisions. The broad, general privilege asserted by defendant does not exist apart from executive privilege. When relevance and good cause for disclosure is shown and a recognized privilege is not claimed, disclosure is mandated by the rules in a suit against the United States. Eule 501 of the Uniform Federal Eules of Evidence provides in pertinent part that—
Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. * * *
There is no common-law privilege of the general nature asserted by defendant here. The common law speaks only of executive privilege and of such things as attorney-client, husband-wife, and priest-penitent privilege. Cf. Kaiser Alum, & Chem. Corp. v. United States, 141 Ct. Cl. 38, 45, 157 F. Supp. 939, 944 (1958). Further, it is clear from the legislative history of the Federal Eules of Evidence that Congress rejected the concept of governmental privilege against disclosure of official information in favor of the general reference in Eule 501 to those privileges recognized by the Constitution, statute, and the common law. [See annotations to Eule 501 and to proposed Eule 509 rejected by Congress.]
“Defendant points to the Freedom of Information Act, 5 U.S.C. § 552, and to exemption 5 found in section 552(b) (5) as statutory authority for its position. The FOIA was de *991 signed to make Government documents more freely available to an inquiring public, with certain specified exceptions. Soucie v. David, 448 F. 2d 1067 (D.C. Cir. 1971). Exemption 5 is one of those exceptions and as interpreted by the courts protects, against disclosure, internal working papers in which opinions are expressed and policies are formulated and recommended short of the final decision. Again, the purpose of that exemption is to encourage candid expression of views by subordinates to the decision makers of Government. Advice memoranda that explain final decisions are outside the scope of exemption 5 and must be disclosed. Two recent Supreme Court cases have delineated the application of this exemption. NLRB v. Sears, Roebuck & Co., 421 U.S. 132 (1975), and Renegotiation Bd. v. Grumman Aircraft Eng'r Corp., 421 U.S. 168 (1975). In exercising equity jurisdiction conferred by the FOIA, the appropriate court must weigh effects of disclosure and nondisclosure, according to traditional equity principles, and determine the best course to follow in given circumstances, and in making such determination effect on the public is the primary consideration. General Serv. Adm. v. Benson, 415 F. 2d 878 (9th Cir. 1969). The clear trend of decision in such cases, as reflected by recent FOIA amendments, is to favor disclosure.
Defendant, however, fails to distinguish between the policies and purposes of the FOIA and the discovery rules of the court. The FOIA does not establish a privilege against disclosure that may be asserted by counsel under Rule 74. The ROIA is enforced exclusively by federal district courts, and the Court of Claims has no jurisdiction thereunder. Further, ‘[djiscovery for litigation purposes is not an expressly indicated purpose of the Act.’ Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 20, 24 (1974).
Finally, defendant says that to require production of the documents as to which discovery is here sought would conflict with Gay Gibson, supra. The short answer to that is that the brief order in Gibson did not discuss the issue of governmental privilege, independent of executive privilege. Defendant argues only that the order ‘impliedly acknowledged the existence of such privilege.’ We do not think so. While *992 the order protected intra-agency opinions and conclusions against disclosure, we are not shown that executive privilege was not the basis for the ruling or was not claimed. We do know that the factual context from which that order arose was materially different from the facts of this case.
“We believe the weight of modern authority is expressed in Peterson v. United States, 52 F.R.D. 317 (S.D. Ill. 1971), and Abel Investment Co. v. United States, 53 F.R.D. 485 (D. Neb. 1971). They hold that free discovery of materials which are not trial preparation materials or otherwise privileged is favored under the Federal Rules of Civil Procedure. Our rules are similar and mandate a similar result. These were tax refund cases. They say that mere presence of opinions, conclusions and recommendations, not trial preparation material, is no protection against discovery when relevance and a genuine need is shown for their discovery. That is the case here. Counsel for the Government should not be permitted to determine what evidence the court will permit to be discovered by exercise of such a unique pretext as it now advances. Governmental interests are protected by constitutionally recognised common-law executive privilege, properly asserted. Of course, even executive privilege has its limitations and is not absolute, but we do not need to go into that here since it is not claimed in this case. United States v. Nixon, 418 U.S. 683 (1974), Sun Oil Co. v. United States, 206 Ct. Cl. 742, 514 F. 2d 1020 (1975).
“it is therefore ordered that, upon review, defendant’s objections to the orders of the trial judge of December 4, 1974, and March 14, 1975, must be and are rejected, and the defendant’s motion for relief thereunder is denied. The orders are affirmed.”
On October 3,1975 the court denied defendant’s motion for rehearing and rehearing en banc.