**DEUTERIUM CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**and**

**EIC Laboratories, Inc., Third-Party Defendant.**

**No. 425–82C.**

United States Claims Court.

Feb. 2, 1984.

As Modified Feb. 6, 1984.

Joseph Y. Houghton, Washington, D.C., for plaintiff.

Donald E. Townsend, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

Charles C. Winchester of Fish & Richardson, Boston, Mass., for EIC Laboratories, Inc.

## ORDER

COLAIANNI, Judge.

On August 26, 1982, plaintiff filed a claim for damages in the United States Court of Claims alleging patent infringement, uncompensated taking of plaintiff's trade secrets and inventions, and breaches of implied and express contracts. This suit was prompted by defendant, through the Energy Research and Development Agency (ERDA), entering a contract with Pacific Gas & Electric Company (PG & E) and EIC Laboratories, Inc. (EIC) to establish both a pilot and a demonstration upstream geothermal steam processing system for control of pollution at PG & E's Geothermal Power Plant Unit No. 7 at The Geysers in California. Plaintiff apparently had been involved in some developmental work with PG & E of substantially the same kind contemplated by the ERDA contract. Plaintiff argues that certain proprietary information was appropriated, and patents were infringed, in the performance of defendant's contract.

This order concerns defendant's assertion that three groups of documents are protected from discovery under the deliberative process privilege. Those documents are identified by the parties as D–37 through D–42, D–43, and D–57. Documents D–37 through D–42 concern the review of the proposal to ERDA by PG & E and EIC that resulted in the contract for the geothermal steam processing system at The Geysers. This group of documents contains the proposal evaluation sheets and comments of

the reviewers for that proposal. The documents in D–43 are cover letters used by defendant to send the proposal to those reviewers. The documents in D–57 concern the review of a different proposal, one submitted by Battelle-Northwest to the National Science Foundation.

Plaintiff has sought to have these documents produced by various motions. Defendant has offered to produce these documents, pursuant to a protective order, with the names of its reviewers deleted. Plaintiff has rejected defendant's offer and insists that the documents be produced intact.

On December 15, 1983, defendant filed a formal claim of "deliberative process" privilege covering the three groups of documents. Appended to defendant's claim was the affidavit of Danny J. Boggs, Acting Secretary of Energy,[1] which formally asserted the claim of privilege and asked that none of the documents be disclosed without deleting all information that could identify the reviewers.

Defendant agrees to produce the documents now at issue, but wishes to delete the names and addresses of the reviewers, as well as any other identifying information. The sole issue, therefore, is whether defendant has established that the reviewers' identities are privileged. For the following reasons, this court finds that it has.

### Discussion

■ Defendant based its claim on the deliberative process privilege.[2] The court finds, however, that the executive privilege, properly invoked, bars discovery in this instance. Although both doctrines may be similarly founded on the policy of encouraging open communication within a department or agency, only the executive privilege is recognized in this court. *See Cetron*

*Electronic Corp. v. United States,* 207 Ct.Cl. 985, 990 (1975); *Drexel Heritage Furnishings, Inc. v. United States,* 4 Cl.Ct. 169 at 170 (Cl.Ct.1983). The distinction between these two doctrines is best illustrated by a comparison of two cases from our predecessor court, *Kaiser Aluminum & Chemical Corp. v. United States,* 141 Ct.Cl. 38, 157 F.Supp. 939 (1958) (claim of executive privilege, properly invoked, upheld), and *Cetron Electronic Corp. v. United States,* 207 Ct.Cl. 985 (deliberative process privilege not recognized).

*Kaiser* concerned an action for damages and contract reformation based on the United States' alleged breach of a most favored purchaser clause in a contract for sale of three aluminum-producing plants. Plaintiff sought all documents relating to that sale and to an allegedly more favorable sale to one of its competitors. Defendant claimed privilege as to only one document: "an advisory opinion on intra-office policy" relating to the sales at issue. 141 Ct.Cl. at 45, 157 F.Supp. at 944. The court noted that this advisory opinion was "the kind that every head of an agency or department must rely upon for aid in determining a course of action * * *." *Id.* at 47, 157 F.Supp. at 945. The court found: "There is a public policy involved in this claim of privilege for this advisory opinion—the policy of open, frank discussion between subordinate and chief concerning administrative action." *Id.* at 48, 157 F.Supp. at 946. Therefore, the court determined that the advisory opinion was "privileged from inspection as against public interest but not absolutely." *Id.* at 49, 157 F.Supp. at 946.

■ Crucial to *Kaiser,* and crucial to the claim of executive privilege, was the agency head's affidavit. *See Kaiser Aluminum & Chemical Corp. v. United States,* 141 Ct.Cl.

---

1. The Department of Energy (DOE) is the successor of the Energy Research and Development Agency and custodian of all relevant documents. Acting Secretary Boggs claimed privilege on behalf of both DOE and the National Science Foundation based on DOE's custody of the documents in D–57.

2. The deliberative process privilege is normally raised in cases arising under the Freedom of Information Act. *See, e.g., NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *EPA v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). The privilege is codified at 5 U.S.C. § 552(b)(5), and in that context no affidavit from the agency head is necessary to invoke it.

at 42–43, 157 F.Supp. at 942–943. The agency head must aver, and the circumstances sufficiently demonstrate, that disclosure would significantly and adversely affect the agency's vital functions.

These requirements are highlighted by the later case of *Cetron Electronics Corp. v. United States,* 207 Ct.Cl. 985. In *Cetron,* plaintiffs were attempting to obtain various internal reports, prepared by officials of the Internal Revenue Service, relating to a penalty tax assessment. No claim of privilege was asserted by the agency head, and no showing was made "that * * * production would upset vital Government functions— for there is no claim of executive privilege." *Id.* at 990. In contrasting the doctrines of executive and deliberative process privilege, the court noted:

> Both doctrines are said to have a similar basis, however, in public policy which favors candid discussion between subordinates and superiors in Government. It is argued that such discussion would be handicapped by the possibility of disclosure and, thus, the decisionmaking process would be impeded.

*Id.* at 989. The court held, however:

> There is no common-law privilege of the general nature asserted by defendant here. The common law speaks only of executive privilege and of such things as attorney-client, husband-wife, and priest-penitent privilege. *Cf. Kaiser Alum, & Chem. Corp. v. United States,* 141 Ct.Cl. 38, 45, 157 F.Supp. 939, 944 (1958). Further, it is clear from the legislative history of the Federal Rules of Evidence that Congress rejected the concept of governmental [deliberative process] privilege against disclosure of official information in favor of the general reference in Rule 501 to those privileges recognized by the Constitution, statute, and the common law. [See annotations to Rule 501 and to proposed Rule 509 rejected by Congress.]

*Id.* at 990.

█ Although defendant argued it was claiming "deliberative process" privilege, it properly invoked the executive privilege by submitting the affidavit of Acting Secretary Boggs which noted the serious and adverse effect disclosing the reviewers' identities would have on the agency's operations. The Acting Secretary averred:

> 7. The operations of both the Department of Energy and the National Science Foundation [NSF] require a free flow of advice and recommendations from persons and organizations from both inside and outside the Government. This is especially true when it comes to the evaluation of technical proposals by Government peer reviewers because the opinions and recommendations of these reviewers are relied upon and play a vital part in the deliberative process of selecting and funding proposals. It is in the public interest to foster free and frank consideration of proposals submitted to the Government. Such free and frank consideration can only be had when the identities of and opinions associated with reviewers can be withheld from unnecessary and unwarranted public scrutiny. The evaluation process would be severely inhibited if DOE and NSF were not able to keep confidential reviewers' names and specific comments that may be associated with the reviewers. It is for this reason that the comments of various experts are solicited with the express understanding that to the fullest extent permitted by law the names and the specific comments that may be associated with the reviewers will not be disclosed. * * *
>
> 8. There is a compelling need for confidentiality regarding reviews of proposals because the disclosure of the identity and specific comments that may be associated with the reviewers would tend to discourage frank and uninhibited analysis and discussion of proposals which are needed by the Government. This need for confidentiality applies to the portions deleted from the documents in Attachment A [documents D–37 through D–43 and D–57] because I have found that these portions reveal the identity of and specific comments that may be associated with the reviewers. For these reasons, I have concluded that production of the

documents in Attachment A without the deletions would be injurious to the public interest in that it would adversely affect the deliberative processes involved in the selection of proposals for Government funding.

I have also concluded that the production of the documents in Attachment A without the deletions would violate the solemn commitment made to the reviewers to keep confidential their identity and specific comments that might be associated with them.

9. Pursuant to the authority vested in me as Acting Secretary of Energy, and pursuant to my duties and responsibilities under 42 U.S.C. § 7131 and § 7254, I hereby assert a formal claim of privilege and respectfully request that none of the documents in Attachment A be disclosed without the deletions in response to the requests of the plaintiff or otherwise in connection with any other issue in this case.

As previously noted, the executive privilege is not absolute. *See Cetron Electronics Corp. v. United States,* 207 Ct.Cl. at 992; *Sun Oil Co. v. United States,* 206 Ct.Cl. 742, 750, 514 F.2d 1020, 1024 (1975); *Kaiser Aluminum & Chemical Corp. v. United States,* 141 Ct.Cl. at 49, 157 F.Supp. at 947. *Cf. United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953) (state secrets privilege, when properly invoked, absolute). Plaintiff, however, has shown no compelling need for the information sufficient to override the privilege. To support its request, plaintiff argued that the identifying information in documents D–37 through D–43 is necessary—

to develop facts showing the extent to which defendant and its prospective partner PGandE and the reviewers, or each of them, took into consideration in their evaluations plaintiff's prior cooperative work with PGandE at The Geysers and plaintiff's proprietary rights with respect to PGandE's proposed use of the EIC copper sulfate process.

Plaintiff claims the identifying information in D–57 would help it—

(1) to identify prior art regarding hydrogen sulfide emission control from geothermal power plants which was known to defendant and Battelle prior to the filing of plaintiff's patent application for Patent No. 4,123,506, and (2) to show the extent to which information had been disseminated regarding plaintiff's cooperative arrangement with PGandE for field testing plaintiff's hydrogen sulfide emission control process at The Geysers.

In neither claim has plaintiff made a sufficient showing to override the privilege. The need for and relevance of the information plaintiff hopes to obtain from the reviewers, and even the likelihood of obtaining it, are dubious at best. Moreover, plaintiff's reasons for seeking the documents are in no way frustrated by producing the documents requested with the names of defendant's reviewers deleted.

Plaintiff has also indicated that it sought the documents without deletion in the hopes of deposing the named receivers. Any such depositions would not appear to provide plaintiff with the information it seeks. Such information can in any event be more readily obtained by plaintiff's deposition of knowledgeable individuals at PG & E and EIC.

IT IS THEREFORE ORDERED that defendant's motion for a protective order IS GRANTED to the extent that all information identifying the reviewers in documents D–37 through D–43 and D–57 shall be deleted from those documents, and the remaining portions of those documents shall be produced by defendant at a mutually convenient time and place no later than February 16, 1984.