Maurice M. **ABRAMSON**,
et al., Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 96–338C.

United States Court of Federal Claims.

Nov. 21, 1997.

William W. Thompson, II, Washington, DC, for plaintiffs. Michael S. Wolly, Zwerdling, Paul, Leibig, Kahn, Thomson & Wolly, P.C., of counsel.

Hillary A. Stern, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Drew Spalding, Government Printing Office, of counsel.

## ORDER

MILLER, Judge.

Plaintiffs, supervisory employees of the United States Government Printing Office (the "GPO"), filed an action in this court seeking overtime compensation and liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 260 (1994). Plaintiffs' claim is predicated on the contention that the GPO was not permitted legally to change its practice of paying overtime to supervisors by granting compensatory time off. This decision was effected by Notice 640–305 (June 5, 1995) (the "notice").

In July 1997, while undertaking discovery, plaintiffs' counsel deposed Edward Blatt, Director of Personnel for the GPO, and Donald A. Ladd, GPO Production Manager. During the course of these depositions, plaintiffs' counsel inquired into the nature of the input and involvement of Messrs. Blatt and Ladd, as well as that of their subordinates, in the process that lead to the promulgation of the

notice officially changing the GPO's overtime compensation policy. Specifically, plaintiffs' counsel requested that Messrs. Blatt and Ladd relate the substance of any conversations they may have had with Michael F. DiMario, the Public Printer of the United States, prior to the issuance of the notice. Defendant objected, asserting the deliberative process privilege.[1] Argument is deemed unnecessary.

### 1. *Deliberative process privilege in the Court of Federal Claims*

Plaintiffs rely on *Alaska v. United States,* 16 Cl.Ct. 5, 6 n. 1 (1988), and *Deuterium Corp. v. United States,* 4 Cl.Ct. 361, 363 (1984), for the proposition that, although the court recognizes the executive privilege, the deliberative process privilege is not recognized. The deliberative process privilege was first recognized by the United States Court of Claims, in *Kaiser Aluminum & Chemical Corp. v. United States,* 141 Ct.Cl. 38, 49, 157 F.Supp. 939, 946 (1958), where the court determined: "So far as the disclosure of confidential intra-agency advisory opinions is concerned, we conclude that they belong to that class of governmental documents that are privileged from inspection as against the public interest but not absolutely." This is because "[t]here is a public policy involved in this claim of privilege for ... [an] advisory opinion—the policy of open, frank discussion between subordinate and chief concerning administrative action." *Kaiser,* 141 Ct.Cl. at 48, 157 F.Supp. at 946. In 1973 the Supreme Court reaffirmed the generally recognized rule that " 'confidential intra-agency advisory opinions ... are privileged from inspection.' " *EPA v. Mink,* 410 U.S. 73, 86, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973) (citing *Kaiser,* 141 Ct.Cl. at 49, 157 F.Supp. at 946). In *NLRB*

*v. Sears Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.D.C.1966), *aff'd sub nom. V.E.B. Carl Zeiss, Jena v. Clark,* 384 F.2d 979 (1967)), the Court recognized that within the scope of the executive privilege exists a deliberative process privilege which protects documents " 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' "

The Federal Circuit has reaffirmed the Court of Claims' recognition of the deliberative process privilege, under the name "executive privilege," stating: "The executive privilege ... protects agency officials' deliberations, advisory opinions and recommendations in order to promote frank discussion of legal or policy matters in the decision-making process." *Zenith Radio Corp. v. United States,* 764 F.2d 1577, 1580 (Fed.Cir.1985) (citing *Kaiser,* 141 Ct.Cl. at 49, 157 F.Supp. at 946). However, because litigants and the courts have used different names to describe the privilege recognized in *Kaiser,* some confusion developed regarding the viability of the deliberative process privilege in the Court of Claims. The confusion is best illustrated in *Cetron Electronic Corp. v. United States,* 207 Ct.Cl. 985, 1975 WL 6632 (1975). In that case, although the Government did not assert a claim of executive privilege, it claimed a privilege identical to the privilege recognized in *Kaiser,* but under the name "governmental privilege" and without the formalities necessary for a proper assertion of an executive privilege.[2] *Id.* at 989. Consequently, the court ruled that "[t]here is no common-law privilege of the general nature asserted by defendant here. The common

---

**1.** During Mr. Blatt's deposition, defendant also asserted the deliberative process privilege and the attorney-client privilege with respect to certain documents that were reviewed during the process of creating the notice. Defendant subsequently determined that none of these documents was subject to the deliberative process privilege and produced the documents in redacted form relying solely on the attorney-client privilege. Because the documents ultimately were produced, plaintiffs have decided to reserve their right to challenge the propriety of these redactions. Plaintiffs' motion to compel therefore is

limited to those inquiries regarding the substance of the conversations involving Messrs. Blatt, Ladd, and DiMario.

**2.** Under *United States v. Reynolds,* 345 U.S. 1, 7–8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953), a common-law executive privilege can only be raised by "a formal claim of privilege, lodged by the head of the department which has control over the matter." This formality was not met in *Cetron.*

294

law speaks only of executive privilege and of such things as attorney-client, husband-wife, and priest-penitent privilege." *Id.* at 990 (citing *Kaiser*, 141 Ct.Cl. at 45, 157 F.Supp. at 944). Some decisions have read *Cetron* to stand for the proposition that the deliberative process privilege is not recognized by the court. *See Alaska*, 16 Cl.Ct. at 6 n. 1; *Deuterium*, 4 Cl.Ct. at 363. The view more consistent with binding precedent, however, is that *Cetron* held that any assertion of the deliberative process privilege must be made in the context of an executive privilege and must meet the formalities required for proper assertion of a common-law executive privilege. *Accord CACI Field Servs. v. United States*, 12 Cl.Ct. 680, 686–87 & n. 7 (1987), *aff'd*, 854 F.2d 464 (Fed.Cir.1988). In summary, the Court of Federal Claims recognizes both the executive privilege and the deliberative process privilege.

2. *Assertion of deliberative process privilege with respect to a legislative agency*

■ Responding to plaintiffs' argument that the deliberative process privilege is not available to legislative agencies such as the GPO, defendant makes three points: 1) The common-law roots of the deliberative process privilege support its extension beyond the executive branch of Government; 2) the reasons underlying the availability of the deliberative process privilege to the executive branch are equally applicable to the legislative branch; and 3) recent case precedent supports the extension of the deliberative process privilege to the legislative branch.

Although plaintiffs cite authority for the proposition that communications between executive agencies and Congress do not fall within the scope of the privilege, *see Dow Jones & Co. v. Department of Justice*, 917 F.2d 571 (D.C.Cir.1990), they offer no reason why the intra-agency communications of a legislative agency should not benefit from the same protection afforded to the intra-agency communications of an executive agency. In the instant case, restricting the privilege as

plaintiffs argue would fail to serve the purpose for which it was created. Meaningful distinctions between the GPO and executive agencies that unquestionably hold the right to invoke the privilege are unidentifiable. Consequently, no reason is apparent to bar extension of the deliberative process privilege to the GPO, even though it is a legislative agency.

In *Walsky Constr. Co. v. United States*, 20 Cl.Ct. 317 (1990), the court identified three procedural requirements with which the Government must comply in order to assert properly the executive privilege:

First, the head of the agency that has control over the requested document [or information] must assert the privilege after personal consideration. Second, the head of the agency must state with particularity what information is subject to the privilege. Third, the agency must supply the court with "precise and certain reasons" for maintaining the confidentiality of the requested document [or information].[3]

*Id.* at 320 (internal citations omitted); *see also Alaska*, 16 Cl.Ct. at 11–12; *Deuterium*, 4 Cl.Ct. at 363–64.

■ Following proper assertion of the privilege, the Government must then satisfy its two fundamental legal requirements. First, the information sought must be predecisional, or address activities " 'antecedent to the adoption of an agency policy.' " *Walsky*, 20 Cl.Ct. at 320 (quoting *Jordan v. Department of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978)). The United States Court of Appeals for the District of Columbia Circuit clarified the nature of this requirement in *Senate of Puerto Rico v. Department of Justice*, 823 F.2d 574, (D.C.Cir.1987). "A document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates. [Consequently], to approve exemption of a document as predecisional, a court must be able 'to pinpoint an agency decision or policy to which the document contributed.' " *Id.* at 585 (quoted in *Walsky*, 20 Cl.

**3.** These procedural requirements generally are satisfied through the production of a declaration or affidavit by the agency head, and produced in response to a motion to compel. Some courts explicitly mandate the production of an affidavit or declaration in order formally to invoke the privilege. *See Reynolds*, 345 U.S. at 7–8, 73 S.Ct. at 531–32.

Ct. at 320). Thus, a document or information will be considered pre-decisional by linking it to a final decision. *See Walsky*, 20 Cl.Ct. at 321.

■ Second, the information must be deliberative in nature, containing opinions, recommendations, or advice pertaining to agency decisions. *See Renegotiation Board v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975). Factual information is not subject to the privilege. *See Drexel Heritage Furnishings, Inc. v. United States*, 4 Cl.Ct. 169, 170 (1983), *aff'd*, 809 F.2d 790 (Fed.Cir.1986). The information withheld also must "reflect an integral part of the Government's reasoning or deliberative process." *Walsky*, 20 Cl. Ct. at 321 (citing *Kaiser*, 141 Ct.Cl. at 49, 157 F.Supp. at 946). To come within the privilege, the document or information "must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C.Cir.1975) (quoted in *Walsky*, 20 Cl.Ct. at 321).

■ Finally, the privilege is not absolute and may be "overcome upon a showing of evidentiary need weighed against the harm that may result from disclosure." *CACI Field Servs.*, 12 Cl.Ct. at 687; *see also Kaiser*, 141 Ct.Cl. at 49, 157 F.Supp. at 946.

### 3. *Procedural requirements*

■ On September 17, 1997, Mr. DiMario executed a declaration formally claiming the deliberative process privilege with respect to oral advice received from Messrs. Blatt and Ladd. *See* Declaration of Michael F. DiMario, Sept. 17, 1997, ¶¶ 5–6. This declaration satisfies the three procedural requirements articulated in *Walsky* necessary to invoke the privilege. First, Mr. DiMario, as the Public Printer of the United States, is charged with the overall management of the GPO and in that capacity has the authority to make decisions affecting the compensation of GPO employees pursuant to 44 U.S.C. § 305 (1994). *See* DiMario Decl. ¶ 2. Mr. DiMario authorized the issuance of the notices modifying the overtime compensation policy based on "personal knowledge and upon personal review and consideration of the information

made available to [him] by [his] staff." *Id.* ¶ 3. Second, Mr. DiMario's declaration limits the scope of the information subject to the privilege to discussions occurring during a May 5, 1995 meeting attended by Mr. Blatt and to certain later conversations with Mr. Ladd. *See id.* ¶¶ 5–6. Finally, Mr. DiMario explains that if such "deliberations and discussions were to be disclosed, it would not only compromise the necessarily confidential and candid relationship among staff members, but create an inhibited atmosphere not conducive to the formulation of sound decisions, thereby reducing the ability of the official of GPO to effectively take actions concerning the employees of GPO." *Id.* ¶ 8. Mr. DiMario also asserts that disclosure in this instance would seriously impair the free exchange of information necessary to make informed decisions. *See id.* Such an explanation provides sufficient precision and certainty to satisfy the third procedural requirement.

### 4. *The pre-decisional requirement*

■ Mr. DiMario met with Mr. Blatt on May 5, 1995, one month prior to the date on which the former authorized the issuance of the notice effecting the change in overtime policy. *See* DiMario Decl. ¶ 5. Although prior to this meeting with Mr. Blatt, Mr. DiMario made a tentative decision to change the policy, he viewed the meeting as an "opportunity for meeting attendees to express candidly and with reservation their opinions and to make recommendations." *Id.* ¶ 5.

Plaintiffs contend that because Mr. DiMario arrived at a tentative decision regarding the change in overtime policy, Mr. DiMario's discussion with Mr. Blatt on May 5, 1997, should be considered not pre-, but post-decisional. Mr. DiMario's declaration supports such an interpretation, as there would be little conceivable use in the solicitation of analyses, advice, opinions, and recommendations regarding a change in overtime policy after arriving at a final decision. Furthermore, Mr. DiMario states unequivocally that he made the decision to change the overtime policy after the May 5 meeting. *See* DiMario Decl. ¶ 5. Given these considerations, this

court cannot classify Mr. Blatt's conversation on May 5, 1995, as other than pre-decisional.

Plaintiffs also contend that Mr. DiMario's discussions with Mr. Ladd should be considered post-decisional. Mr. DiMario solicited the advice of Mr. Ladd regarding the change in overtime policy at some point after the May 5, 1995 meeting with Mr. Blatt, but prior to the June 5, 1995 issuance of the notice officially promulgating the change in the overtime policy. *See* DiMario Decl. ¶ 6. Plaintiffs argue that "*after* the May 5 meeting and *after* Mr. DiMario 'made the decision that we would proceed with a change to the agency's policy and would offer compensatory time for overtime worked by supervisors,' DiMario met with Donald Ladd." Plfs' Br. filed Oct. 14, 1997, at 6 (quoting DiMario Decl. ¶ 5). This characterization of the events leading to Mr. DiMario's final decision to change the overtime policy is not supported by the tenor of his declaration. Although Mr. DiMario did state that he made the decision to change the policy after the May 5, 1995 meeting with Mr. Blatt, Mr. DiMario did not state that this decision was made prior to his meeting with Mr. Ladd. Indeed, the claim that "Mr. Ladd's opinions and advice were part of my thought process before I authorized the issuance of the Notice" plainly suggests that Mr. DiMario's decision to change the overtime policy occurred after his conversation with Mr. Ladd. *See* DiMario Decl. ¶ 6.

### 5. *The deliberative requirement*

Mr. DiMario's declaration lends persuasive support for the conclusion that his conversations with Messrs. Blatt and Ladd were deliberative, not factual in nature, and therefore should be considered privileged. Plaintiffs maintain that it is "entirely unclear that these conversations were solely deliberative and evaluative, as opposed to factual," Plfs' Br. filed Oct. 14, 1997, at 6, and that "the Public Printer nowhere states that the conversations only involved deliberations and evaluations of changing to a new policy, as opposed to factual discussions of how the old policy factually worked and how the new policy factually would work." *Id.*

Examination of the primary content of the conversations at issue does not suggest that the participants discussed the mechanics of the new policy versus that of the old policy, or any other factually based matters. According to Mr. DiMario, the purpose of the May 5, 1995 meeting was to discuss "the issues surrounding whether the agency should proceed with a change in its overtime pay policy for supervisors." DiMario Decl. ¶ 5. The participants addressed the "pros and cons" of such a decision, and Mr. DiMario specifically recalled receiving analyses, advice, opinions, and recommendations from Mr. Blatt. *Id.* Similarly, Mr. DiMario sought the advice of Mr. Ladd in order to discuss and evaluate the effect such a change in overtime policy might have on GPO supervisors, the majority of whom worked within Mr. Ladd's area of responsibility. *See id.* ¶ 6. These discussions served the purpose of permitting Mr. DiMario to consider the opinions, advice, and recommendations of his subordinates in a manner more accurately characterized as "deliberative," rather than "factual."

### 6. *Compelling need*

After complying with the procedural and substantive requirements for invoking the deliberative process privilege, a movant may still overcome the privilege by demonstrating a "compelling need" to discover the privileged information. *See Deuterium*, 4 Cl.Ct. at 365. Furthermore, once the privilege has been invoked, a court should hesitate to request documents or information for inspection *in camera* until such time that the moving party has made this difficult showing. *See Kaiser*, 141 Ct.Cl. at 50–51, 157 F.Supp. at 947.

In support of their request, plaintiffs contend:

> [T]he communications sought to be protected are at the heart of this litigation, because what is at issue is more than just "the legal question" of whether "GPO's payment of compensatory time rather than overtime pay to supervisors who work beyond their shifts violated one of several statutes identified by plaintiffs." Rather, as the Complaint and the motion to compel

repeatedly make clear, what is also at issue is whether the Defendant has "willfully" violated the law by its actions. The discussions DiMario had with Ladd and Blatt may contain evidence which, if not itself admissible, could lead to the discovery of admissible evidence on the question.

Plfs' Br. filed Oct. 14, 1997, at 6–7 (internal citations omitted).

Clarifying the nature of "compelling need," the Supreme Court in *United States v. Reynolds*, 345 U.S. 1, 11, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953), explained that "the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate." Ultimately, the court must strike a balance between "the Government's interest in frank deliberations" and "the need for full and fair disclosure during the adversarial process." *Walsky*, 20 Cl.Ct. at 320.

Plaintiffs' showing does not rise to the level of "compelling need." Plaintiffs submit a memorandum dated May 5, 1995, following a meeting of that date attended by Messrs. DiMario and Blatt, which suggests that the decision to implement the change in overtime policy was made only after a legal analysis. The facts cannot warrant a finding that plaintiffs adequately have demonstrated the compelling need necessary to override the privilege.

Plaintiffs also contend that, in response to their claim for overtime compensation,

> the government will assert that even if overtime compensation is due, liquidated damages are not. The standard for evaluating that assertion is set forth in the statute itself: "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 16 of [the FLSA]." 29 U.S.C. § 260. The evidence of the DiMario/Blatt/Ladd conversations goes directly

to that issue of good faith and reasonable grounds.

Plfs' Br. filed Oct. 14, 1997, at 7. This line of argument does not demonstrate the compelling need necessary to override the privilege. Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

Plaintiffs' motion to compel is denied.