**KAISER ALUMINUM & CHEMICAL CORPORATION**
v.
**UNITED STATES.**
No. 102–54.

United States Court of Claims.
Jan. 15, 1958.

James H. McGlothlin, Washington, D. C., for plaintiff. Gerhard A. Gesell and John W. Douglas, Washington, D. C., were on the brief.

Kendall M. Barnes, Washington, D. C., with whom was Asst. Atty. Gen., George Cochran Doub, for defendant. S. R. Gamer, Washington, D. C., was on the brief.

REED, Justice (Retired), sitting by designation.

Plaintiff, Kaiser Aluminum & Chemical Corporation, formerly named The Permanente Metals Corporation, filed a petition pending motion for call, pur-

suant to Rule 13 of this court, 28 U.S. C.A. The pertinent part of the Rule is set out below.[1] This petition was accompanied by a Motion for Call in accord with 28 U.S.C. (Supp. III, 1952 ed.) § 2507 and this court's Rule 27.[2] Before action was taken on the motion an amended and amplified petition was filed, and at the same time a motion for withdrawal of the call without prejudice. This was allowed.

The plaintiff seeks damages and contract reformation for alleged breach of a contract between Kaiser and the United States, the latter acting through the Liquidator of War Assets, General Services Administration, for sale to Kaiser of three specified plants producing together fabricated aluminum products from beauxite ore.

Plaintiff alleges that one provision of that contract agreed to July 27, 1949, reads as follows:

"It is understood that the War Assets will not offer the same type of plants to Reynolds Metals or others on a more favorable basis. In the event that circumstances now unforeseen result in a more favorable disposal of such plants Permanente shall receive corresponding treatment and the disposal documents and obligations and rights therein contained for these three plants (Baton Rouge, Mead, and Trentwood) will be modified and adjusted accordingly."

Plants of the same type were sold thereafter by the United States through the same agency to Reynolds Aluminum

---

1. "When the plaintiff cannot state his case with the requisite particularity without an examination of documents or things in the possession of any department or agency of the Government and has been unable upon application to obtain a sufficient examination of such documents or things, he may file a petition stating his claim, as far as is in his power, and specifying as definitely as he can the documents or things he requires. * * *"

2. 28 U.S.C. § 2507. *Calls and discovery*
"(a) The Court of Claims may call upon any department or agency of the United States or upon any party for any information or papers, not privileged, for purposes of discovery or for use as evidence. The head of any department or agency may refuse to comply with a call issued pursuant to this subsection when, in his opinion, compliance will be injurious to the public interest.

"(b) Without limitation on account of anything contained in subsection (a) of this section; the court may, in accordance with its rules, provide additional means for the discovery of any relevant facts, books, papers, documents or tangible things, not privileged."
* * * * *
Subsection (b) of § 2507 was an addition of September 3, 1954, 68 Stat. 1247. The reason for its addition was thus stated in H.R.Rep. No. 1981, 83d Cong., 2d Sess., p. 20, U.S.Code Cong. & Adm. News, p. 3991:
"The purpose of proposed subsection (b) of section 2507 of title 28 is to

eliminate the argument that the only means by which a litigant in the Court of Claims can obtain papers in the custody of Government departments is through a call, and to make it clear that in the enactment of section 2071, title 28, United States Code, Congress intended that the Court of Claims could issue rules, which give to all litigants, private citizens and the Government alike, the same rights of pretrial discovery as is accorded to them in suits brought in the District Courts pursuant to section 1346, title 28, United States Code." (§ 1346 covers suits against the United States in District Courts.)
28 U.S.C. § 2071 provides:
"*Rule-making power generally*
"The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court."
"Rule 27. Calls
* * * * *
"(b) *In Behalf of the Parties.* Upon motion by any party for call upon any adverse party, the Court may order such adverse party to file with the Clerk * * * within such time as the Court in its order may specify, for purposes of discovery or for use as evidence at the trial, (1) any documents, papers, books, accounts, letters, photographs, objects, or other tangible things, not privileged, shown to be relevant to the issues of the case, * * *."

Company, a subsidiary of Reynolds Metals Company.

Kaiser charges breach of this most favored purchaser clause by use of methods for calculating costs of the plants and rentals more favorable to Reynolds than to Kaiser; by the seller's assumption of costs of Reynolds fume control and damage therefrom, omitted from the Kaiser contract; by selling Kaiser a plant with deficient carbon furnaces and to Reynolds without such deficiency and by giving Reynolds more favorable treatment on rehabilitation costs for future operations.

Kaiser alleged in its petition pending call that the documents in its hands, which included the complete Reynolds contract, were "wholly inadequate to enable Kaiser to state with appropriate particularity the precise scope of its claim," and the damages. The amended petition was filed over seven months later. The additional time had enabled Kaiser to secure more information but "right to renew any and all demands" of the Motion for Call was reserved. On November 22, 1955, after denial by the Government of plaintiff's request for access, a Motion for Production of Documents for Inspection was filed under Court of Claims Discovery Rule 26, instead of Call Rule 27, the basis of the Motion for Call. This was allowed on January 4, 1956.[3]

Kaiser sought from the General Services Administration certain documents, not otherwise available to Kaiser or its representatives, or not generally available to the public in printed form, relating to these Kaiser and Reynolds sales. The request was in the broadest form. As it was ultimately fully complied with except as to one specific document, it suffices to say that the request included all internal GSA reports, memoranda, or other documents concerning these sales to Kaiser and Reynolds prepared by all employees or agents of the Administration for intra-agency use, particularly prior drafts of the Kaiser contract with Agency interpretation and justification thereof and similar papers in connection with that claim. There was also sought the like intra-agency reports and comparisons concerning the Reynolds contract.

The record indicates compliance with that order covering many papers and documents including some of the general type of the paper involved in the present motion. Kaiser was advised by Government counsel that the General Services Administrator declined to produce one document, within the coverage of the order on the ground that it was "contrary to the national interest." Thereupon a motion was promptly filed for a specific order to produce the omitted document. Plaintiff objected that while the document was covered by the court's order, the claim of privilege had not been made by the head of the department after actual personal consideration, citing United States v. Reynolds, 345 U.S. 1, 7, 73 S.Ct. 528, 97 L.Ed. 727. Plaintiff asserted that the court must make the determination of the privilege and that no basis for the claim had been shown.

3. Authority for Rule 26 is found in 28 U.S. C. § 2507(b), footnote 2, supra. So far as here pertinent, Rule 26 reads as follows:
"Rule 26. Discovery and production of documents and things for inspection, copying, or photographing
"(a) *Order to Produce.* Upon motion of any party showing good cause therefor and upon notice to all other parties, the Court may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects or tangible things, not privileged, which are in his or its possession, custody, or control and which constitute or contain evidence (including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts) regarding any matter that is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party; * * *."

The Government thereupon filed a letter dated June 11, 1957, of the agency head, the Administrator of the General Services Administration, set out below, declining to produce the document.[4] The Government took the position "that this court should not review the claim of privilege asserted by a witness or an agency head by requiring the witness to testify or the agency to produce documents, so that the court may itself reach a conclusion as to whether or not such information could be disclosed without risk to the public interest." This court on consideration of "the claim of privilege lodged by the General Services Administrator" ordered production "before the commissioner of this court * * * for the sole purpose of enabling said commissioner to make a determination as to whether said document is privileged as that term is understood in the law of evidence. * * * The commissioner will then report his determination to the court."

The Government, through Assistant Attorney General Doub, in response to that order declined to produce the document in these words, addressed to the Clerk of this court:

"We have been informed by the Administrator that, after careful consideration of the Court's order, he must respectfully decline to produce the document in question. The Administrator has requested us to communicate his position to the Court. In so doing, we wish to make clear that this action is not intended to suggest any lack of authority in the Court to pass on any question of production or admissibility as a matter of evidence. Rather, the position taken rests on the claim of executive privilege, substantive in nature, and in this Court expressed in statutory form, [28] U.S.C. § 2507.

"As previously explained, the document involved is a memorandum that was written by a Special Assistant to the War Assets Liquidator. His duties, at least so far as the contracts here involved are concerned, were confined to recommendations and advice on program policy. He played no part in the operative events involved in this case and had no relations or discussions with plaintiff or its competitor. His use by the Liquidator on the matters here in question was in the nature of a confidential assistant."

Kaiser, by memorandum, asked for sanctions on the Government's failure to discover on the following grounds:

"5. Defendant has asserted no colorable claim of privilege. It is not claiming attorney client, national secrets or any other privilege recognized in the law of evidence. Its refusal is instead based on grounds which have never been recognized by the courts as privileged—the theory that disclosure of a subordinate's 'advisory' reports would adversely affect agency operations."

This court, on recommendation of the commissioner, ordered the production of

4. Dear Mr. Attorney General:

"The document, the disclosure of which was called for in the case of Kaiser Aluminum & Chemical Corp. v. United States, Court of Claims No. 102–54, your file GCD:KMB–154–16–1397, contains opinions that were rendered to the Liquidator of War Assets by a member of his staff concerning a proposed sale of aluminum plants. Those opinions do not necessarily reflect the views of, or represent the position ultimately taken by, the Liquidator of War Assets. A disclosure of the contents of documents of this nature would tend to discourage the staffs of Government agencies preparing such papers from giving complete and candid advice and would thereby impede effective administration of the functions of such agencies.

"In view of these considerations, I am of the opinion that the disclosure of the documents in question would be injurious to the public interest. For this reason, a compliance with the call for a disclosure of it in this case should be respectfully refused."

"Sincerely yours,
"(Signed)  Franklin G. Floete,
"Administrator."

the document and in default thereof, for the commissioner

" * * * pursuant to Rule 36(b) (2)(ii) to refuse to permit the defendant to introduce any evidence in defense of this action, permitting, however, the defendant to cross-examine witnesses who may testify on behalf of the plaintiff."

Defendant filed a motion for reconsideration and oral argument before the court which was granted and the argument heard. We now proceed to the determination of the issues presented.

Two legal issues emerge. First, does the United States possess a privilege to refuse to produce a document that contains opinions rendered the Liquidator by a member of his staff concerning a sale?[5]

Second, can a head of an agency of the Government determine the privilege for himself?

## I

As to the privilege. The Administrator's claim of privilege, footnote 4 supra, is susceptible of being read to claim that the document contains data, in addition to advisory "opinions". However, we read the uncontradicted refusal to produce of the Administration through Assistant Attorney General Doub to allege that the document is "confined to recommendations and advice on program policy." See letter, page 5, supra. If the Special Assistant played a part in the operative events, e. g., determination of costs or values, representations to Kaiser or Reynolds or survey of the plants, a different situation might exist. We therefore consider this case on the basis of a refusal by the Administrator to produce an advisory opinion on intra-office

policy in relation to the sales to Kaiser and Reynolds. Cf. Hickman v. Taylor, 329 U.S. 495, 501, 505–506, 67 S.Ct. 385, 91 L.Ed. 451.

Under Benson v. United States, 130 F.Supp. 347, 133 Ct.Cl. 11, this court held the words in Rule 26, "not privileged," relate to privilege as known and understood in the law of evidence. There was no actual claim of privilege considered in that case. The decision establishes that if a plaintiff proceeds under our Call Rule 27 he may be refused discovery if the head of the department or agency deems compliance "injurious to the public interest" under 28 U.S.C. § 2507(a), footnote 2, supra. On the other hand, if a plaintiff, as here, proceeds under our Rule 26, the sole defense is the one that the defendant has made in this case, to wit, the document sought is "privileged" as that word is known and understood in the law of evidence. This is the "executive privilege, [claimed by the defendant] substantive in nature, and in this Court expressed in statutory form, [28] U.S.C. § 2507."[6]

Executive privilege is a phase of release from requirements common to private citizens or organizations. It is granted by custom or statute for the benefit of the public, not of executives who may happen to then hold office.[7] It finds its strongest expression in the government's absolute freedom from suit except as it may consent. When the United States consents to be sued, *simpliciter*, full disclosure of all facts in possession of either party to the litigation is normally desirable. There are recognized exceptions when the production of the evidence would be contrary to the interests of the public. Disclosures that

---

**5.** Footnote 4, supra.

**6.** The Government asks reconsideration of the Benson case, but we do not find it necessary in this proceeding. Its argument for reconsideration rests on the unity of "Calls and discovery" in the statutory analysis of § 2507 and the legislative anomaly, in a code chapter setting up trial procedure for the Court of Claims, for subjecting the United States to suit,

of permitting executive refusal under (a) and denying it under (b), even though the defense of "not privileged" is available in both sections of the statute and Rules 26 and 27.

**7.** The assertion of such a privilege by the Executive, vis-a-vis Congress, is a judicially undecided issue. See Richardson, Messages and Papers of the President 186; 40 Op.Atty.Gen. 45.

would impair national security or diplomatic relations are not required by the courts.[8]  It is accepted that the identity of informers, as such, in the interests of the State, may be protected even in civil cases.[9]

If it is a criminal prosecution and a man's life or liberty may depend upon the discovery, the more favored rule is that protection could be furnished the informer only at the price of requiring the Government to either produce the material evidence in its hands or suffer dismissal of the prosecution.  Judge Learned Hand, in United States v. Andolschek, 2 Cir., 142 F.2d 503, 506, said, " * * * the government must choose; either it must leave the transaction in the obscurity from which a trial will draw them, or it must expose them fully." See Jencks v. United States, 353 U.S. 657, 672, 77 S.Ct. 1007, 1 L.Ed.2d 1103.  The Jencks case does not open the Government files to ransacking.  It only requires the production of papers "touching the subject matter of their testimony at the trial."  The above cases involve facts or factual situations.  They are not relationships like husband and wife, attorney and client, or penitent and confessor.

In England the protection of information is equally broad:

"The law is that the Crown is entitled to full discovery, and that the subject as against the Crown is not. That is a prerogative of the Crown, part of the law of England, and we must administer it as we find it. * * *  Now I know that there has always been the utmost care to give to a defendant that discovery which the Crown would have been compelled to give if in the position of a subject, unless there be some plain overruling principle of public interest concerned which cannot be disregarded." [10]

When the United States is a party, "[w]hether or not, or to what extent, there is a 'privilege' against the discovery of information in the possession of the Government is an unsettled question." [11]  Here the document sought was intra-office advice on policy, the kind that a banker gets from economists and accountants on a borrower corporation, and in the Federal government the kind that every head of an agency or department must rely upon for aid in determining a course of action or as a summary of an assistant's research.  In the case of governments, "[t]he administration of justice is only a part of the general conduct of the affairs of any State or Nation, and we think is (with respect to the production or non-production of a State paper in a Court of justice) subordinate to the general welfare of the community."[12] Free and open comments on the advantages and disadvantages of a proposed course of governmental management would be adversely affected if the civil servant or executive assistant were compelled by publicity to bear the blame for

---

8.  United States v. Reynolds, 345 U.S. 1, 7, 73 S.Ct. 528, 97 L.Ed. 727, and citations; 8 Wigmore, Evidence § 2378(a) (B) (3d Ed.), p. 789.

9.  4 Moore's Federal Practice 1173; Wigmore, supra, § 2374; Vogel v. Gruaz, 110 U.S. 311, 316, 4 S.Ct. 12, 28 L.Ed. 158. Cf. Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 83 L.Ed. 151; Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337.

10. Duncan v. Cammell, Laird & Co., [1942] A.C. 624, 630, 633, quoting from Attorney-General v. Newcastle-upon-Tyne Corporation. This, like Gruaz' case, was private litigation where the government was not a party.
In Bank Line v. United States, 2 Cir., 163 F.2d 133, there is a broad discussion of the problem of government privilege against production of documents. See also Robinson v. State of South Australia, [1931] A.C. 704, which passed upon South Australian Rules of Court upholding power of judicial inspection. These cases emphasize that the privilege of withholding documents depends upon the circumstances of each case.

11. 4 Moore's Federal Practice 1162.

12. Beatson v. Skene, 5 H. & N.Exch.Rep. 837, 853.

946

errors or bad judgment properly chargeable to the responsible individual with power to decide and act. Government from its nature has necessarily been granted a certain freedom from control beyond that given the citizen. It is true that it now submits itself to suit but it must retain privileges for the good of all.

There is a public policy involved in this claim of privilege for this advisory opinion—the policy of open, frank discussion between subordinate and chief concerning administrative action.

When this Administrator came to make a decision on this $36,000,000 contract, with intricate problems of accounting and balancing of interests, he needed advice as free from bias or pressure as possible. It was wisely put into writing instead of being left to misinterpretation but the purchaser, plaintiff here, was entitled to see only the final contracts, not the advisory opinion.

■ That is not to say that every file of government papers is closed to discovery. Here, however, there was an administrator reaching a decision. When under somewhat similar circumstances Mr. Henry Wallace, then Secretary of Agriculture, fixed the rates for the Kansas City Stock Yards, certain dealers attacked his conclusions on the ground that he had not himself heard or read the evidence. While his conclusion was set aside on other grounds for lack of a proper hearing, the court said: "* * * we agree with the Government's contention that it was not the function of the court to probe the mental processes of the Secretary in reaching his conclusions * * *." Morgan v. United States, 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129. On the return

of the case to the Supreme Court, even stronger language was used:

"* * * Just as a judge cannot be subjected to such a scrutiny, compare Fayerweather v. Ritch, 195 U.S. 276, 306–307, 25 S.Ct. 58, 49 L.Ed. 193, so the integrity of the administrative process must be equally respected. See Chicago, B. & Q. Ry. Co. v. Babcock, 204 U.S. 585, 593, 27 S.Ct. 326, 327, 51 L.Ed. 636. It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other. [313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429.]"

The document sought here was a part of the administrative reasoning process that reached the conclusion embodied in the contracts with Kaiser and Reynolds. The objective facts, such as the cost, condition, efficiency, terms and suitability are otherwise available. So far as the disclosure of confidential intra-agency advisory opinions is concerned, we conclude that they belong to that class of governmental documents that are privileged from inspection as against public interest but not absolutely.[13] It is necessary therefore to consider the circumstances around the demand for this document in order to determine whether or not its production is injurious to the consultative functions of government that the privilege of non-disclosure protects.

■ We have spoken of the broad coverage of the plaintiff's request. While this is not the attorney-client privilege, the demand for this document seeks to

13. It cannot be "all communications to the heads of departments, are to be produced and made public whenever a suitor in a Court of justice thinks that his case requires such production." Beatson v. Skene, 5 H. & N.Exch.Rep., at 851. 4 Moore's Federal Practice 1175. Walling v. Comet Carriers, D.C., 3 F.R.D. 442; Walling v. Richmond Screw

Anchor Co., D.C., 4 F.R.D. 265, 269; United States v. Kohler Co., D.C., 9 F.R.D. 289, 291; Pacific-Atlantic S.S. Co. v. United States, 4 Cir., 175 F.2d 632, 637. Cf. Bank Line v. United States, 2 Cir., 163 F.2d 133; Leen v. President of the Executive Council et al., 1926 Irish Reports 456, 462 et seq.

lay bare the discussion and methods of reasoning of public officials. The fact that the author is dead is immaterial here. It is not a privilege to protect the official but one to protect free discussion of prospective operations and policy. This goes beyond the disclosure of primary facts upon which conclusions are based. It is akin to the request for "production of written statements and mental impressions contained in the files and the mind of the attorney," which are unprotected by the attorney-client privilege. Cf. Hickman v. Taylor, supra, 329 U.S. at page 509, 67 S.Ct. at page 392. Nothing is alleged by Kaiser, through the affidavit of its negotiating Vice President, Mr. Calhoun, or otherwise, to suggest any need for production of the document to establish facts.

Viewing this claim of privilege for the intra-agency advisory opinion in its entirety, we determine that the Government's claim of privilege for the document is well founded. It would be definitely contrary to the public interest in our view for such an advisory opinion on governmental course of action to be produced by the United States under the coercion of a bar against production of any evidence in defense of this suit for contract damages.

## II.

■ We turn now to the issue of the necessity for the presentation of the document to a commissioner of this court, according to our order of June 14, 1957, for him to make a determination as to its privilege "as that term is understood in the law of evidence." What has heretofore been said substantially disposes of that question. The power must lie in courts to determine executive privilege in litigation. When the United States submits its controversies to the Judicial Department, it becomes amenable to its orders for their determination. The Supreme Court, when speaking of a similar governmental privilege, reached this general conclusion as to production in court:

"It may be possible to satisfy the court, from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged. When this is the case, the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers." [United States v. Reynolds, supra, 345 U.S. at page 10, 73 S.Ct. at page 533.]

Of course, the executive privilege for intra-departmental advice would very rarely have the importance of diplomacy or security. It does not in this case. Our commissioner, like a judge, is a suitable person before whom to present evidence when it is subject to appraisal as to privilege. As a group one would find in them the same qualities of objective approach and conscientious preservation of needed privacy as in important executive officers. It seems equally obvious that the very purpose of the privilege, the encouragement of open expression of opinion as to governmental policy is somewhat impaired by a requirement to submit the evidence even unilaterally. When the head of an agency claims privilege from discovery on the ground of public interest, which is recognized as a basis for the claim, it seems to us a judicial examination of the sought-for evidence itself should not be required without a much more definite showing of necessity than appears here. We have adverted to the fact that all the contracts are available to the plaintiff, and also the factual situation of the plants. No fraud is charged, no duality of interest, only a breach of the terms of open contracts. We do not think this record shows the need for examination of the privileged document. To require it here would mean the creation of an absolute right for judicial examination and determination of all evidence whose discovery the executive deemed contrary to the public interest. If executive de-

948

termination is to be merely preliminary, the officer and agency most aware of the needs of government and most cognizant with the circumstances surrounding the legal claim will have to yield determination to another officer less well equipped. Circumstances may require such a course. This should not be ordered without definite showing by plaintiff of facts indicating reasonable cause for requiring such a submission.

Accordingly, this court's orders of June 14 and July 2, 1957, are set aside, and plaintiff's motion of April 26, 1957, for production of the above referred to document, is denied.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.