**WALSKY CONSTRUCTION CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 593–88 C.**

United States Claims Court.

April 27, 1990.

---

R.R. De Young, Anchorage, Alaska, for plaintiff.

Catherine A. Christman, Washington, D.C., with whom was Stuart M. Gerson, Asst. Atty. Gen., for defendant.

## OPINION

RADER, Judge.

In this contract case, Walsky Construction Co. (plaintiff) seeks redress for performance delays allegedly caused by the United States Air Force (Air Force). During discovery, plaintiff asked defendant to produce two reports stemming from an investigation of the Air Force's contract administration. Defendant invoked the executive privilege and refused to produce the reports. On March 12, 1990, plaintiff filed

the pending motion to compel discovery. RUSCC 37.

Plaintiff contends that executive privilege does not bar discovery because the requested documents do not contain opinions or recommendations and do not reveal the Air Force's deliberative policymaking process. Defendant contends that the privilege applies because the documents are pre-decisional in nature and because disclosure would jeopardize the Air Force's self-evaluation process.

This court held oral argument on plaintiff's motion on April 25, 1990. Upon reviewing the parties' papers and hearing argument, this court grants plaintiff's motion and orders defendant to produce the available documents.

## BACKGROUND

On July 17, 1985, plaintiff entered into a contract with the Air Force to repair a hangar at the Elmendorf Air Force Base in Alaska. The contract contemplated a completion date of July 17, 1986. The parties later modified the contract to reflect a completion date of September 9, 1986. A subsequent modification again extended the completion date to June 15, 1987. Plaintiff did not complete the contract, however, until August 14, 1987. The Air Force assessed plaintiff $8,100.00 in liquidated damages for the delay from June through August.

On June 15, 1987, plaintiff submitted a $553,092.00 claim alleging that the Air Force supplied defective specifications, made numerous design changes during performance, and failed to respond timely to problems on the job site. The contracting officer denied plaintiff's claim on October 6, 1987. Plaintiff subsequently filed this action in the United States Claims Court on October 12, 1988. Plaintiff seeks delay damages. Plaintiff also seeks remission of the liquidated damages assessment.

During discovery, plaintiff asked defendant to produce two documents—the final report of a Unit Effectiveness Investigation conducted for the Air Force by the Inspector General, and an Office of Special Investigation (OSI) report. In the Unit Effectiveness Investigation, the Inspector General evaluated the Air Force's contract administration. The Inspector General prepared the final report at issue based in part on an investigation of plaintiff's contract. The OSI report purportedly stemmed from an investigation of plaintiff's contract only.

Defendant objected to production of both these documents on grounds of executive privilege. Plaintiff thereafter filed a motion to compel discovery, pursuant to RUSCC 37, on March 12, 1990. This court grants plaintiff's motion and therefore orders defendant to produce the Unit Effectiveness Investigation report.[1]

## DISCUSSION

### Executive Privilege

The need for confidentiality in public policy decision making "is old, common to all governments, [and] essential to ours since its formation." *Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C.Cir.1975), quoting former Attorney General Levi. As the Supreme Court explained, "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances ... to the detriment of the decision making process." *United States v. Nixon*, 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974).

The doctrine of executive privilege recognizes that "the Government cannot operate in a fish bowl." *Vaughn*, 523 F.2d at 1146. Specifically, "the privilege subserves a preponderating policy of frank expression and discussion among those upon whom rests the responsibility for making the determinations that enable government to operate...." *Carl Zeiss Stiftung v. V.E.B.*

---

1. At oral argument, plaintiff indicated that its request for the Office of Special Investigation report is no longer at issue. Defendant supplied plaintiff and the court with a declaration from a special agent of the Air Force Office of Special Investigations. On penalty of perjury, the agent declared that he could not find any OSI report on the contract at issue after conducting a thorough search.

*Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.D.C.1966). In sum, the executive privilege or the deliberative process privilege prevents "injury to the quality of agency decisions." *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 151, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975). Thus, the privilege does not protect documents alone, but also "the decision making processes of government agencies." *Id.* at 150, 95 S.Ct. at 1516.[2]

### Asserting Executive Privilege

■ The Government may invoke executive privilege to avoid production of sensitive internal memoranda or investigative reports during litigation. *See, e.g., Kaiser Aluminum & Chem. Corp. v. United States,* 141 Ct.Cl. 38, 157 F.Supp. 939 (1958). The Government has the burden to prove that the privilege protects the documents subject to discovery. To assert the privilege, the Government must follow a three-step process. First, the head of the agency that has control over the requested document must assert the privilege after personal consideration. *Mobil Oil Corp. v. Department of Energy,* 102 F.R.D. 1, 5 (N.Y.N.Y.1983).[3] Second, the head of the agency must state with particularity what information is subject to the privilege. *Mobil Oil,* 102 F.R.D. at 5–6. Third, the agency must supply the court with "precise and certain reasons" for maintaining the confidentiality of the requested document. *Mobil Oil,* 102 F.R.D. at 6.

■ To protect documents under the executive privilege, the Government must satisfy two fundamental legal requirements. *Senate of Puerto Rico v. United States Dept. of Justice,* 823 F.2d 574, 585 (D.C.Cir.1987). First, the documents must record pre-decisional agency conduct. In other words, the records or reports must address activities "antecedent to the adoption of an agency policy." *Jordan v. Department of Justice,* 591 F.2d 753, 774

(D.C.Cir.1978). Second, the documents must contain decisional information. In other words, the records or reports must address "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn,* 523 F.2d at 1143–44.

■ Moreover, executive privilege is not absolute, but qualified. Even though the Government properly asserts the privilege, plaintiff nevertheless may discover the material at issue by showing a compelling need. *Sun Oil Co. v. United States,* 206 Ct.Cl. 742, 750, 514 F.2d 1020, 1024 (1975).

■ In sum, then, executive privilege "effects an adjustment between important but competing interests." *Zeiss,* 40 F.R.D. at 324. The court must balance "on the one hand, the public concern in revelations facilitating the just resolution of legal disputes, and, on the other, occasional but public needs for confidentiality." *Zeiss,* 40 F.R.D. at 324. The availability of the privilege ultimately will depend on how the court weighs the Government's interest in frank deliberations against the need for full and fair disclosure during the adversarial process.

### Pre-decisional Requirement

■ To obtain executive privilege protection, a document must contain pre-decisional information. *N.L.R.B.,* 421 U.S. at 151–52, 95 S.Ct. at 1516–17. The D.C. Circuit explained:

> A document is "predecisional" if it precedes, in temporal sequence, the "decision" to which it relates. Accordingly, to approve exemption of a document as predecisional, a court must be able "to pinpoint an agency decision or policy to which the document contributed."

*Senate of Puerto Rico,* 823 F.2d at 585 (citations omitted).

The Government may generate documents containing recommendations as

---

2. Many cases involving the executive privilege arise when litigants sue to obtain documents under the Freedom of Information Act. 5 U.S.C. § 552 (1988). Exemption 5 of this Act incorporates the executive privilege. *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975).

3. The head of the agency must assert the privilege in the form of a declaration or affidavit. *See Cetron Elec. Corp. v. United States,* 207 Ct.Cl. 985, 989–90 (1975); *SCM Corp. v. United States,* 473 F.Supp. 791, 797 (Cust.Ct.1979).

part of a deliberative process which does not ripen into a final decision or a final change in policy. *See, e.g., N.L.R.B.,* 421 U.S. at 151 n. 18, 95 S.Ct. at 1517 n. 18. To gain privilege protection for a document that does not contribute to a final decision, the Government must show that it nonetheless generated the document in anticipation of a decision. The Government thus can show that a document is predecisional by linking it to either a final decision or a proposed decision.

*Character of Privileged Information*

 A court also must examine the character of the documents. The executive privilege applies to documents that contain opinions, recommendations, or advice on policy or legal matters. *Zenith Radio Corp. v. United States,* 764 F.2d 1577, 1580 (Fed.Cir.1985). Similarly, the document at issue must reflect an integral part of the Government's reasoning or deliberative process. *Kaiser Aluminum,* 157 F.Supp. at 946. The United States Court of Appeals for the District of Columbia Circuit explained:

> [T]o come within the privilege ... the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.

*Vaughn,* 523 F.2d at 1144.

The mere fact that an agency uses a document during policy discussions does not trigger the privilege. *Vaughn,* 523 F.2d at 1143. Evaluation reports that merely provide information or raw data "are not themselves a part of the decisional process," even though the evaluator "hopes that its analyses will have a salutary effect on agency ... practices...." *Vaughn,* 523 F.2d at 1145. Thus, investigations conducted to evaluate agency performance are not necessarily privileged. Rather, to qualify for protection, an evaluation must directly recommend courses or prescribe options for a specific agency decision or policy change.

*Unit Effectiveness Investigation*

 The Unit Effectiveness Investigation is not subject to the executive privi-

lege. The report does not meet the first prong of the test for privilege protection. The investigatory report does not purport to contain pre-decisional information. Defendant did not identify either a final decision or a proposed decision which the report preceded. At oral argument, defendant's counsel inferred that decisions might have flowed from the report. At the time of the report's creation, however, the Air Force identified no decisions or policy changes under review.

The affidavit supplied by the Secretary of the Air Force (Secretary Rice) also did not identify any pre-decisional information in the report. Secretary Rice declared that the investigation was "informational in nature" and merely "supplie[d] the raw data upon which decisions can be made." *Vaughn,* 523 F.2d at 1145. The Air Force did not identify a specific decision or potential policy change associated with these investigative documents.

The report also does not satisfy the second prong of the test for privilege protection. The investigation report notably omitted opinions and recommendations. For example, the report recounted interviews and cited examples of operating conditions. Secretary Rice, however, does not state in his affidavit that the investigators recommended courses for a policy change or otherwise participated in a decision-making process.

The Unit Effectiveness Investigation collected information on current contract administration through interviews with personnel. Defendant's Opposition to Plaintiff's Motion to Compel Discovery, filed April 9, 1990. Affidavit of Secretary of the Air Force Rice, filed April 9, 1990 (Affidavit), at ¶¶ 5, 6. The investigators then prepared a post-inspection report. The report cited "pertinent examples of what can be best characterized as lessons learned," including "less than optimal operating conditions." Affidavit, at ¶ 7. The report at issue, for example, "document[ed] the inspection accomplished for the purpose of assessing management of assigned resources, identifying problems for resolution, and identifying exceptional managers

and managerial methods." Affidavit, at ¶ 10.

Secretary Rice also states that the report "documents the inspection ... for the purpose of assessing management ... and identifying problems...." Affidavit, at ¶ 10. In other words, the report merely provided data so that the Air Force could evaluate its current procedures. While the report identified problems and exceptional management techniques, Secretary Rice did not state that the report proposed solutions or recommended adoption of particular techniques. Thus, the Unit Effectiveness Investigation report does not contain the advice, opinions, and recommendations typically protected by executive privilege.

The court asked defendant's counsel to distinguish between the report at issue and the many other evaluative summaries routinely prepared by the Air Force. Defendant's counsel only argued that the report at issue was pre-decisional. Yet, "pre-decisional materials are not exempt merely because they are pre-decisional; they must also be a part of the agency give-and-take—of the deliberative process—by which the decision itself is made." *Vaughn*, 523 F.2d at 1144.

In sum, then, this investigation report is at best a suggestion box which might lead to a deliberative process, rather than a pre-decisional document. Moreover, defendant does not show that this investigation and final report are themselves part of a deliberative process. This report is not the type of opinion and recommendation material subject to protection.

### Policy Foundations for Privilege

The deliberative process privilege rests on three foundations: (1) encouragement of open, frank intra-agency discussions prior to decisions; (2) protection against premature disclosure of proposed decisions and policies; and (3) prevention of public confusion resulting from disclosure of reasons and rationales not ultimately reflected in an agency decision. *Russell v. Department of the Air Force*, 682 F.2d 1045, 1048 (D.C.Cir.1982).

The court's decision to grant plaintiff's motion to compel in this case does not offend these policy foundations for executive privilege. In the first place, the privilege ensures that the Government may engage in frank and open deliberations when making important public policy decisions. In this case, however, the Air Force can maintain candor without the privilege because the report's level of generality poses little threat to the deliberative process.

According to Secretary Rice, the identity of the individuals interviewed during the investigation is not disclosed in the final report. Affidavit, at ¶ 6. The contents of personal comments are not revealed to supervisors. Affidavit, at ¶ 6. Further, the reports do not attribute information to specific individuals or refer to persons in specific positions. Affidavit, at ¶ 7.

In its briefs and at oral argument, defendant's counsel similarly indicated that the Unit Effectiveness Investigation report speaks only in the most general terms. For example, it discussed several contracts at once without distinguishing between them. In fact, defendant argued that the type of specific information which plaintiff now seeks is not the subject of such a generic report. If this is the case, then it is hard to see how disclosure would have a chilling effect on the Air Force's internal evaluation process.

Finally, without any decision flowing from this report, neither premature disclosure nor disclosure of alternative reasons and rationales pose a threat. Therefore, this court's ruling preserves the policies underlying executive privilege protection.

If this court placed all evaluative processes and documents within the executive privilege, an enormous share of administrative action would disappear from public view. For example, in *Vaughn*, the Government argued that the "entire process of management appraisal, evaluation, and recommendations for improvement is a seamless whole, that is in its entirety a deliberative process." *Vaughn*, 523 F.2d at 1145.

In an opinion by Judge Wilkey, the D.C. Circuit did not accept this expansive view.

The D.C. Circuit declined to protect such "a huge quantity of amorphous management improvement activity in every agency...." *Vaughn*, 523 F.2d at 1145. The D.C. Circuit feared that "[t]he phrase 'management process' ... would swallow up a substantial part of the administrative process, and virtually foreclose all public knowledge regarding the implementation of ... policies in any given agency." *Vaughn*, 523 F.2d at 1145. To avoid this problem, the D.C. Circuit wisely held that the Government cannot meet its burden of proof without explicitly defining or limiting the deliberative process purportedly subject to the executive privilege. *Vaughn*, 523 F.2d at 1146.[4] To satisfy this requirement, the Government could identify a specific decision or policy deliberation with which the sensitive documents are directly associated.

In this case, defendant did not define the parameters of the privilege it seeks. In his affidavit, Secretary Rice asserts the privilege "to preserve the ... evaluation process...." Affidavit, at ¶ 3. The evaluation process would include deciding what to investigate, the collection of data, the preparation and issuance of the report, and feedback on the report. Affidavit, at ¶¶ 5–9. This sweeping characterization does not define or identify the deliberative process subject to the privilege. Rather, the Air Force seeks to shield broad categories of information unassociated with any deliberative process.

Defendant's statements at oral argument also demonstrated its vague and open-ended position on the scope of the privilege. The court asked whether the Air Force made any decisions on the basis of the investigation. Defendant's counsel only could infer that the Air Force would instruct personnel to improve performance based on the information contained in the report. Yet, as the D.C. Circuit has noted:

> [T]he absence of any assured final decision [is] indicative of the mass of information the Government seeks to protect, i.e., the failure of the affidavits relied on to come to grips with and define what it is ... that the Government considers the deliberative process and thus entitled to protection.

*Vaughn*, 523 F.2d at 1146.

## CONCLUSION

This court rejects defendant's assertion of executive privilege as to the unit effectiveness investigation report. Consequently, this court grants plaintiff's motion to compel production of documents pursuant to RUSCC 37.

---

**4.** In reaching its decision, Judge Wilkey observed that the public has an interest in the activities of administrative agencies. *Vaughn v. Rosen,* 523 F.2d 1136, 1146 (D.C.Cir.1975). This interest largely stems from the fact that administrative agencies control many aspects of daily life and make many important political judgments.