**CONCRETE CONSTRUCTION CO.,
INC., Plaintiff,**

v.

**U.S. DEPARTMENT OF LABOR, et
al., Defendants.**

No. C2–89–649.

United States District Court,
S.D. Ohio, E.D.

Sept. 12, 1990.

Roger Sabo, Columbus, Ohio, for plaintiff.

Albert Ritcher, Columbus, Ohio, for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to both the plaintiff's, Concrete Construction Co., Inc. ("Concrete"), motion for summary judgment and the defendants', U.S. Department of Labor, *et al.*, motion for summary judgment. Both motions are brought under Federal Rule of Civil Procedure 56.

## FACTS

On May 24, 1989, Concrete requested access to documents that were being held by the Occupational Safety and Health Administration (OSHA). The documents requested concerned the inspection schedule for construction work sites generated by OSHA from May 18, 1988 to May 18, 1989.[1]

---

1. The request specifically asked for the following documentation:

1. A list of construction worksites determined by your office to be "active", as compiled quarterly, showing sequence numbers assigned, worksite location, and number of employers estimated;

2. A list of all sources upon which you relied to compile the quarterly "active" construction worksite list, including Dodge reports, local building permits, etc.;

3. A list of all worksites deleted from the quarterly "active" list because those sites received a substantially complete inspection within the preceding quarter. Please specifically include those sites deleted from the second quarter of 1989 list based on an inspection conducted during the first quarter of 1989;

4. A copy of the random number table used to generate a quarterly inspection cycle from the "active" construction worksite list;

5. A copy of OSHA–146 Form, construction inspections projected;

6. A list showing the order of inspection for each quarterly cycle;

7. A list of all construction worksites carried over from one cycle to another during this time period;

8. A list of all additional worksites selected during this period because the worksites in the quarterly cycle were inspected, but fewer employers were inspected than originally predicted;

9. A list of all worksites deleted from the quarterly cycle, after beginning a cycle, where construction activity at a worksite ceases before the inspections can be made or where the worksite became ineligible because a substantially complete inspection of the worksite had been conducted as a result of a complaint (or other type of investigation);

10. Access to information concerning any and all inspections conducted during the above time period for each of the following contractors:

Complete General Construction
1211 East Fifth Avenue
Columbus, Ohio
Dinneen Excavating Company
7500 Industrial Parkway
Plain City, Ohio 43064
Nicholas Savko & Sons
4636 Shuster Road
Columbus, Ohio
Great Lakes Construction Co.
6600 Schaaf Road
Cleveland, Ohio
The Righter Company
2424 Harrison Road
Columbus, Ohio 43204

11. Please produce, with respect to the above-identified contractors in Paragraph 10, the following documents:

a. Type of inspection(s) (programmed, unprogrammed, imminent danger, fatality/catastrophe, referral, complaint, etc.);

b. Copy of complaint, if applicable;

c. Worksite location(s) of inspection(s);

d. Violation(s) discovered;

e. Job site narrative;

f. Report of opening conference;

On June 6, 1989, James Vaughan, the Columbus Area Director of the OSHA, sent a letter to Concrete with several of the requested documents enclosed, however, OSHA, at the same time, refused to disclose some of the other requested documents. The letter did not provide a reason for these refusals.

On June 27, 1989, Concrete appealed the denial of information to the Solicitor of Labor, pursuant to the Freedom of Information Act (FOIA) requirements, 5 U.S.C. § 552. The Solicitor responded to the appeal on September 1, 1989, by providing Concrete with some of the documents that had initially been denied, however, the Solicitor also continued the refusal for disclosure of some of the documents requested. The Solicitor informed Concrete that information responsive to paragraphs 3, 4, 6, 7, and 8, was not in the possession of the agency. The Solicitor also refused disclosure of any and all information requested in paragraph 5, and certain parts of paragraphs 1 and 2. Access was further denied as to the request contained in paragraph 10. The Solicitor denied the access to the information although only one of the contractors named in paragraph 10 was inspected during the relevant time period.

The Solicitor's basis for refusal to disclose all of the documents requested is Title 5 U.S.C. § 552(b)(5) and (7), (hereinafter "Exemption 5" and "Exemption 7"). These sections of the FOIA provide in relevant part as follows:

(b) This section does not apply to matters that are—

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

\* \* \* \* \* \*

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;

The Court will address the application of the above-referenced code sections to the specific requests for information forwarded by the plaintiff and determine whether summary judgment is appropriate for either party at this time. The Court now turns its attention to the summary judgment standard to be applied.

## STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) citing *Brady v. Southern Ry. Co.,* 320 U.S. 476, 479–480, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

g. Report of closing conference;
h. Employee interview statements;
i. All notes made at or in connection with the inspection;
j. Proposed penalty worksheets;
k. Follow-up inspection reports; and
l. Citation(s) and notification(s) of penalty(ies).

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presented a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the substantive evidentiary burden. Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

In *Banks v. Rockwell International N. Am. Aircraft Operations,* 666 F.Supp. 1053 (S.D.Ohio 1987) (J. Graham), this district enunciated the importance of granting summary judgments in appropriate situations by stating that: "Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed to secure the just, speedy and inexpensive determination of every action." *citing, Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553, (quoting Fed.R.Civ.P. 1) *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. Having discussed the Rule 56 standard of review, the Court now turns to the merits.

## ANALYSIS

■ Both parties are of the opinion that there are no genuine issues of material fact in the instant case and that summary judgment is appropriate. The solitary issue confronting this Court is whether the documents requested by the plaintiff can be properly excluded from the mandates of the Freedom of Information Act. The burden of establishing the exception from disclosure rests squarely with the government, and such exceptions are narrowly construed. *Schell v. United States Dep't of Health & Human Servs.,* 843 F.2d 933 (6th Cir.1988). Furthermore, the Court of Appeals for the Sixth Circuit held in *Schell,* that the district court must have an "adequate factual basis" for its decision. *Id.* at 938 (quoting *Ingle v. Department of Justice,* 698 F.2d 259, 267 (6th Cir.1983)).

## I. FREEDOM OF INFORMATION ACT

In 1982, Congress enacted the Freedom of Information Act, 5 U.S.C. §§ 552 *et seq.,* "to permit access to official information long shielded unnecessarily from public view and ... to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Schell,* at 936 (quoting *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). The Act is a revision of § 3, the public disclosure section, of the Administrative Procedure Act, 5 U.S.C. § 1002 (1964 ed.). Section 3 had not been achieving the desired result in that it had become "looked upon more as a withholding statute than a disclosure statute". *EPA v. Mink,* 410 U.S. at 79, 93 S.Ct. at 832 (citing S.Rep. No. 813, 89th Cong., 1st Sess., 5 (1965); H.R.Rep. No. 1497, 89th Cong., 2d Sess., 5–6 (1966)). The purpose of the FOIA was to create a "basic policy" favoring disclosure. *Department of Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). Congress then created

nine exemptions that "are plainly intended to set up concrete, workable standards for determining whether particular material may be withheld or must be disclosed". *EPA v. Mink*, 410 U.S. at 79, 93 S.Ct. at 832. "But unless the requested material falls within one of these nine statutory exemptions, FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public". *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 221, 98 S.Ct. 2311, 2316, 57 L.Ed.2d 159 (1977). For purposes of the instant matter the Court need only concern itself with the previously mentioned exemptions 5 and 7(A).

The plaintiff has requested information beyond that provided to him by the government. Specifically, some of the information requested in paragraphs 1, 2, 5, and 10 of the plaintiff's letter dated January 8, 1988 and attached to the Complaint as Exhibit C, was not provided to the plaintiff. The government refused disclosure of some of the information in paragraphs 1 and 2 under Exemption 7(A), claiming that disclosure of the information would forewarn selected establishments of OSHA's intention to conduct inspections of their respective workplaces. The government refused disclosure of all information requested in paragraph 5 claiming it was exempt from the FOIA under both Exemption 5 and Exemption 7(A). That information consists of the "FY 88 Field Operations Program Plan" and the "FY 89 Field Operations Program Plan". And finally, the paragraph 10 request for information was denied disclosure by the government pursuant to Exemption 7(A), claiming that the memoranda requested was compiled in the course of an investigation and as such was not discoverable under the FOIA. The Court will briefly address the exemptions to the FOIA under which the government is denying disclosure.

## II. EXEMPTION 5

■ Exemption 5 specifically addresses a privilege unique to the government, commonly referred to as predecisional or deliberative process privilege. The privilege's purposes are to assure that subordinates within an agency will feel free to provide the decision maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action. *See, Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980); *Jordan v. United States Dep't of Justice*, 192 U.S. App.D.C. 144, 163–165, 591 F.2d 753, 772–774 (1978) (*en banc*). The Courts have noted that in deciding whether the documents requested should be protected by the privilege, it must look to whether the document is "predecisional"—whether it was generated before the adoption of an agency policy—and whether the document is "deliberative"—whether it reflects the give-and-take of the consultative process. *Coastal States Gas Corp.*, at 866.

The Supreme Court in *EPA v. Mink*, concluded that the legislative history of Exemption 5 demonstrates that Congress had intended to incorporate generally the recognized rule that "confidential intra-agency advisory opinions ... are privileged from inspection." *Id.*, 410 U.S. at 86–87, 93 S.Ct. at 835–836 (quoting *Kaiser Aluminum & Chemical Corp. v. United States*, 141 Ct.Cl. 38, 49, 157 F.Supp. 939 (1958) (Reed, J.). As both parties had noted, "[t]here is a public policy involved in this claim of privilege ...—the policy of open, frank discussion between subordinate and chief concerning administrative action." *Id.* at 48, 157 F.Supp. at 946. While the Court recognized the privilege, it also noted that "the privilege that attaches to intragovernmental memoranda clearly has finite limits, even in civil litigation. In each case, the question was whether production of the contested document would be 'injurious to the consultative functions of government that the privilege of nondisclosure

protects.' *Kaiser Aluminum & Chemical Corp., supra* at 49, 157 F.Supp. at 946." *EPA v. Mink, supra,* 410 U.S. at 87, 93 S.Ct. at 836. The Supreme Court drew a distinction for evaluation purposes of those documents which contained information that would jeopardize state secrets, and thus would not be discoverable, see *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), and memoranda which merely contained a compilation of factual material or purely factual material contained in deliberative memoranda and severable from its context, which would generally be available for discovery.[2]

In applying Exemption 5 to the instant matter, the Court is mindful that "... the public's access to internal memoranda will be governed by the same flexible, common sense approach that has long governed private parties' discovery of such documents involved in litigation with Government agencies." *EPA v. Mink, supra* 410 U.S. at 91, 93 S.Ct. at 837. Furthermore, since Exemption 5 is concerned with protecting the deliberative process itself, the Sixth Circuit courts are now focusing less on the material sought and more on the effect of the material's release, with the key question being whether disclosure of materials would expose an agency's decision making process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions. *Schell v. United States Dep't of Health & Human Servs., supra* at 940.

■ The Court will now turn its attention to the specific request under which the defendant claims an exemption pursuant to Exemption 5. In order to determine whether the agency's claim that the documents were properly withheld is valid, an understanding of the function the documents serve within the agency is crucial. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1974).

As previously stated, Exemption 5 is being utilized in relation to the FY 88 and FY 89 Field Operation Program Plan documents. The government claims that these documents identify different types of inspections including fatality/catastrophe, complaint, referral, monitoring, variance, follow-up, manufacturing, construction, and maritime inspections. Pursuant to Exemption 5, the government argues that the documents are both predecisional and deliberative in that they are prepared by the area office for submission to the regional office. The regional office, in turn, compiles the information from the various area reports within its jurisdiction and then forwards the compendium to the National Office in Washington D.C. The National Office then reviews the regional reports and the projections contained therein, and relays to the area offices, through the regional offices, directives or changes in their plan. Based upon this process of obtaining approval from higher authority the government contends that the documents are predecisional, with the ultimate decision being made by the National Office.

In response, the plaintiff argues that Exemption 5 does not apply in this case because disclosure of the requested information would not have an effect on the deliberative process. The plaintiff argues that the exemption is not applicable because the document does not contain subordinates' opinions that could be the subject of ridicule if disseminated, and it does not contain information, the disclosure of which would expose an agency's decision making process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its function. Instead, the plaintiff argues that the memorandum merely contains those policies as to which areas are to be given priority, and as policies they are not exempt under Exemption 5.

2. *EPA v. Mink, supra* 410 U.S. at 87–88, 93 S.Ct. at 836; *see also Machin v. Zuckert,* 114 U.S.App. D.C. 335, 316 F.2d 336, *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963) (Air Force Aircraft Accident Investigation Report); *Boeing Airplane Co. v. Coggeshall,* 108 U.S.App.

D.C. 106, 112–113, 280 F.2d 654, 660–661 (1960) (Renegotiation Board documents); *Olson Rug Co. v. NLRB,* 291 F.2d 655, 662 (7th Cir.1961) (no claim that NLRB documents "exclusively policy recommendations").

In reviewing the matter the Court is of the opinion that these documents are not exempt under Exemption 5. The Court cannot imagine, and the government has not provided, any situation or series of circumstances under which the Court could conclude the communications between the Area Office, the Regional Office, and the National Office would suffer in the least from the disclosure of the requested documents. Furthermore, since the government in exercising an exemption bears the burden of demonstrating that the disclosure of this information would hinder or undermine its ability to function, coupled with the fact that the government has not been able to do so, the Court will not permit the government agency to refuse disclosure under Exemption 5. However, the Court is mindful that the government also denies disclosure of the same documents under Exemption 7(A), therefore, that issue shall be addressed *infra.*

### III. EXEMPTION 7

The Supreme Court in *NLRB v. Robbins Tire and Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1977) took the opportunity to address Exemption 7(A). As it was originally enacted, Exemption 7 permitted the nondisclosure of "investigatory files compiled for law enforcement purposes except to the extent available by law to a private party." *Id.* at 221, 98 S.Ct. at 2316 (citing 80 Stat. 251). In 1974, the scope of the privilege was sharply narrowed when Congress, dissatisfied with the broad scope the Courts were affording the exemption, amended it to make it clear that the Government must establish not only that the document was prepared in the course of an "investigation," but that disclosure of the document would "interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The exemption was again modified on October 27, 1986, so as to now exclude from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) *could reasonably be expected* to interfere with enforcement proceedings ..." 5 U.S.C. § 552(b)(7)(A), as

amended (emphasis added). Essentially, the amendment lessens the burden on the government from having to show that the dissemination of the materials "would" interfere, to having to show that it "could reasonably be expected to" interfere.

■ By originally enacting Exemption 7, it reflected Congress' awareness that the law enforcement agencies had legitimate needs to keep certain records and/or files confidential. Congress specifically provided that the purpose of the exemption was to prevent "harm [to] the Government's case in court," S.Rep. No. 813, 89th Cong., 1st Sess. (1965), reprinted in Freedom of Information Act Source Book, Sub-committee on Administrative Practice and Procedure, Senate Judiciary Committee, S.Doc. No. 93–82, p. 44 (1974). The ultimate issue in these types of matters is whether the government has met its burden of demonstrating that disclosure of the information "could reasonably be expected to interfere with enforcement proceedings". A proper resolution of this question requires the Court to weigh the strong presumption in favor of disclosure under FOIA against the likelihood that disclosure *at this time* would harm the government's ability to properly enforce the law. *See, e.g., NLRB v. Robbins Tire & Rubber Co., supra.* It is with this in mind that the Court will address the government's allegation that some of the documents requested fall under Exemption 7.

Realizing that the party exercising the exemption bears the burden of showing that the exemption is proper, the defendant provides that they, OSHA, must establish the following: (1) that it is a law enforcement agency; (2) that the withheld records were compiled for law enforcement purposes, and (3) that disclosure of the records could reasonably be expected to interfere with enforcement proceedings. *Lewis v. I.R.S.,* 823 F.2d 375, 379 (9th Cir.1987).

It does not appear to be refuted that OSHA is a law enforcement agency with its authority for enforcement set out in Title

29 U.S.C. §§ 657 and 658,[3] thus satisfying the first part of the test. It would further appear that the plaintiff does not argue with the defendant's contention that OSHA's document were compiled for law enforcement purposes, satisfying the second part of the test. Instead, the plaintiff argues that the disclosure of the requested information would not interfere with enforcement proceedings, and therefore, the government fails part three of the test. It is this issue that the Court will focus its attention for purposes of Exemption 7(A).

The parties do not argue the importance or the usefulness of the 7(A) exemption for prevention of premature disclosure of important law enforcement records. Clearly, such premature disclosure would permit the charged party to manufacture and construct defenses with full knowledge of what to expect at trial from the government. Without full knowledge of the extent of the government's information the charged party is incapable, without taking a great risk of being impeached at trial, of testifying untruthfully. Instead, the plaintiff attempts to argue that the documents requested for release would not interfere with enforcement proceedings.

■ In response, the government argues that disclosure would in fact interfere with enforcement proceedings, and that a de-

tailed explanation could be provided elucidating the precise interference, however, even the mere explanation of interference would undermine the efficacy of the claimed exemptions. Therefore, the Court has not been afforded an indepth explanation of the nature of the information contained in the withheld documents. Without such information the Court's hands are tied. The sensitivity of the information cannot be weighed when the sensitivity, thus the weight, is unknown to the scales. Therefore, the Court will reserve determination of the motions for summary judgment and instead ORDERS that the documents in question be filed, by the defendants, under seal with the Court by October 1, 1990, coupled with an explanation as to the sensitivity of disclosure of each document or group of general documents. After *in camera* inspection the Court will render its decision.

IT IS SO ORDERED.

---

**3.** § 657. Inspections, investigations, and recordkeeping.
(a) Authority of Secretary to enter, inspect, and investigate places of employment; time and manner.
In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—
(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and
(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

\*    \*    \*    \*    \*    \*
§ 658. Citations.
(a) Authority to issue; grounds; contents; notice in lieu of citation for de minimis violations.
If, upon inspection or investigation, the Secretary or his authorized representative believes that an employer has violated a requirement of section 654 of this title, of any standard, rule or order promulgated pursuant to this chapter, he shall with reasonable promptness issue a citation to the employer. Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the chapter, standard, rule, regulation, or order alleged to have bee violated. In addition, the citation shall fix a reasonable time for the issuance of a notice in lieu of a citation with respect to de minimis violations which have no direct or immediate relationship to safety or health.